**STATE of Tennessee, Appellant,**

v.

**Larry CRAVENS, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Jan. 17, 1989.

Petition to Rehear Denied Feb. 13, 1989.

Charles E. Bush, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, for plaintiff-appellant.

James P. Romer, S.T. Burnett, Jamestown, J.H. Reneau, III, Celina, for defendant-appellee.

OPINION

HARBISON, Chief Justice.

Appellee was convicted of murder in the first degree and was sentenced to life imprisonment. He appealed to the Court of Criminal Appeals, and that court overruled all of the issues presented except one pertaining to the jury instructions. The Court of Criminal Appeals reversed and ordered a new trial because of error in the instructions concerning the issue of malice. After careful consideration, we are of the opinion that there was no reversible error in the questioned instructions. Accordingly we reinstate the judgment of the trial court.

There is no question but that the appellee, Larry Cravens, killed the victim, George Townsend, in Fentress County, Tennessee, on November 1, 1983. Appellee contended that he acted in self-defense and that the homicide was, accordingly, justified. Strong evidence to the contrary was offered by the prosecution. Appellee and

the victim were both engaged in the trafficking or use of illegal contraband narcotics. Appellee admitted that he had placed the victim in contact with prospective sellers of marijuana in the Fentress County area, although appellee denied that he himself had ever bought or sold marijuana. He admitted, however, owing a substantial sum of money to the victim for the purchase of cocaine.

There was evidence that appellee had delivered a substantial quantity of marijuana to the victim and associates of the latter in North Carolina but had not been paid. There was also evidence that appellee and others had brought the victim from North Carolina to Tennessee and were holding him against his will until the marijuana should be returned or payment made therefor.

In the afternoon of November 1, 1983, appellee admitted beating the victim Townsend to death with the butt of a revolver. The victim received eighteen blows to the top of his head, several of them fracturing the skull and depressing bone fragments into the brain. The victim and his Volvo automobile were found at the base of a high cliff, or embankment, with the automobile having been damaged by fire and the body of the victim seriously burned.

It was the testimony of appellee that Townsend demanded payment from appellee of nearly $30,000.00 admittedly owed for cocaine sold to appellee. Appellee testified that Townsend threatened him with a gun. When appellee attempted to seize the gun, he and Townsend fell over the bluff wrestling and landed at or near the base of a steep incline many feet below. He testified that he then hit Townsend two or three times with the pistol, laboriously climbed backed up to the roadway and sought help from the first passersby. He told several witnesses that he had killed Townsend but also stated to some of them that if Townsend were not dead, appellee would be willing to go back down and finish the task. Appellee denied having anything to do with the driving or pushing of Townsend's automobile off of the embankment or setting it afire. Appellee contended that the automobile was still parked near the edge of the roadway when he climbed back up the embankment and left the scene.

The testimony in the case was sharply conflicting and presented classic issues for resolution by the jury. Taken most favorably to the State, abundant material evidence supported the charge of murder in the first degree. We agree with the conclusions of the Court of Criminal Appeals with respect to all issues presented by appellee to that court and preserved here, except with respect to the jury instructions.

■ One controverted issue of evidence involved a telephone call from the victim to a witness in North Carolina during the afternoon of November 1, 1983, about two hours or less before the homicide occurred. According to the witness, the victim made anxious inquiry as to whether the marijuana delivered by appellee to the victim and others in North Carolina had been recovered and was being returned to appellee as demanded. The marijuana had allegedly been misappropriated by an associate of the victim. When the victim was told that the material could not be found, Townsend allegedly told the witness:

Well, I'm a dead man then, love and kisses to everybody.

The trial court held that this statement by the unavailable declarant, Townsend, was admissible as a "verbal act." The Court of Criminal Appeals held that it was admissible as a part of the "res gestae."

In our opinion, it was admissible, primarily to show the state of mind of the declarant, Townsend, a short time prior to his death. In opening statements, counsel for the appellee had asserted that the homicide was committed by appellee Cravens in self-defense. In our opinion, the testimony was admissible to show the fear of the victim and his apprehension of death in view of the claim of the accused that the victim was the aggressor and that the homicide was justifiable. *See generally* D.F. Paine, *Tennessee Law of Evidence* §§ 72–74 (1974). The witness testified that earlier in the day appellee himself had told the witness by telephone that Townsend would be

**756**

killed if the missing marijuana was not located and returned.

As stated previously, the Court of Criminal Appeals reversed and remanded this case for a new trial on the basis of insufficient or inaccurate jury instructions regarding the issue of malice. The court relied primarily upon the decision of this Court in *State v. Martin,* 702 S.W.2d 560 (Tenn. 1985). The opinion in that case was released about eight months after the trial of the present case, so that it was unavailable to the trial judge at the time of the instructions now at issue.

The form of instructions given in the present case was that frequently used in homicide trials prior to the decision in *Martin.* Essentially the instructions concerning the two degrees of murder recognized in this state were combined, with emphasis on the issue of premeditation being given in the instructions on murder in the first degree to distinguish it from murder in the second degree. Instructions on malice then followed to distinguish the offense of murder from one of the degrees of manslaughter.

■ This form was generally disapproved in the *Martin* case, and the Court continues to disapprove of it. In our opinion, all of the elements of each offense should be described and defined in connection with that offense, although in *Martin* we did suggest that there could be cross-referencing or repetition in connection with the lesser offenses since jury instructions in felony cases are required by statute in this state to be written and physically delivered to the jurors for use in their deliberations. Rule 30(c), T.R.Crim.P.

■ The primary reason for reversal in the *Martin* case, however, was not the form of the instructions but the content. In that case the trial court charged the jury that all homicides were presumed to be malicious in the absence of evidence which would rebut the "implied presumption." The Court concluded that the instructions in that case contravened the holdings of the Supreme Court of the United States in the case of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

We find no *Sandstrom* error in the present case in the sense of shifting the burden of proof to the accused. The jurors were clearly instructed that the burden of proof as to each element of the offense rested upon the State throughout. In addition, the word "presumption" was not used at all in the instructions given in the present case. The definition of malice was not given until the court reached the instructions on murder in the second degree, but at that time the subject was fully covered. Earlier the court had distinguished murder in the first degree from second degree murder by defining in detail the element of premeditation.

■ The instructions were delivered to the jury without objection on the part of counsel for appellee, nor were any special requests tendered on behalf of appellee. While the form of the instructions did not comport with that directed in *Martin* and now in current use, we are of the opinion that reversible error was not committed.

Appellee insists that the trial judge failed to instruct the jury that an inference of malice, which was referred to in the instructions, might be rebutted by evidence introduced either by the State or by the accused. While, as stated in *Martin,* that form of instruction is preferred, the charge in the present case contained the following:

A deadly weapon is an instrument, which from the use made of it at the time, is likely to produce death, or to do great bodily harm. The use of a deadly weapon by the party killing, when shown, might warrant an inference of malice sufficient to sustain a charge of second degree murder, unless it is rebutted by other facts and circumstances to the contrary. You should look to all of the facts and circumstances developed by the evidence in this case, to determine whether the State has proved beyond a reasonable doubt the existence of malice.

Since there was neither objection made nor a special request tendered, the form or fullness of the jury instructions are ordi-

narily not appropriate issues for appellate review. Questions concerning the instructions are generally deemed to be waived in the absence of objection or special request, unless they contain plain error. In *Martin, supra,* the Court concluded that a reasonable juror could have misunderstood the instruction on malice and that the instructions given were not constitutionally sufficient in light of the decisions of the Supreme Court of the United States.

That is not the case here. We find no burden-shifting instructions, and, in our opinion, the form of the instructions themselves do not warrant reversal, although in our opinion the form directed in *Martin* is clearer and preferable.

As was true in *State v. Bolin,* 678 S.W. 2d 40 (Tenn.1984), there was abundant evidence from which the trier of fact could have concluded that the killing was both premeditated and malicious. The victim had been mercilessly beaten about the head some eighteen times. The jurors were not bound to accept appellee's testimony that he struck the victim only two or three times. There was evidence from which the jury could have concluded that the automobile was set on fire by appellee, utilizing a gasoline can found near the wrecked automobile and the body of the victim at the base of the cliff. The car could have been pushed over the cliff containing the unconscious victim. These were matters for resolution by the jury, and in the absence of an objection or special request we find no reversible error in the instructions given them concerning the issues of premeditation or malice.

The judgment of the Court of Criminal Appeals is reversed; that of the trial court is reinstated at the cost of appellee. The cause will be remanded to the trial court for any further proceedings which may be necessary.

FONES, COOPER, DROWOTA, and O'BRIEN, JJ., concur.

### ORDER

Under date of January 27, 1989, a Petition for Rehearing was filed on behalf of appellant. After consideration of the petition, the Court is of the opinion that it is not well taken, and the petition is accordingly overruled at the cost of appellant.