**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MAY SESSION, 1997**


**FILED**

August 13, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9607-CC-00215** |
| | ) | |
| Appellee, | ) | |
| | ) | **MADISON COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. WHIT LAFON, JUDGE** |
| **YTOCKIE FULLER,** | ) | |
| | ) | **(ESPECIALLY AGGRAVATED** |
| Appellant. | ) | **ROBBERY)** |

FOR THE APPELLANT:

**GEORGE MORTON GOOGE**
District Public Defender

**JEFF MUELLER**
Assistant Public Defender
227 West Baltimore Street
Jackson, TN 38301-6137

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**WILLIAM DAVID BRIDGERS**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243

**JAMES G. WOODALL**
District Attorney General

**JAMES W. THOMPSON**
Assistant District Attorney General
Lowell Thomas State Office Building
225 Martin Luther King Drive
P.O. Box 2825
Jackson, TN 38302

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# <u>OPINION</u>

The Defendant, Ytockie Fuller, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. Following a jury trial in the Circuit Court of Madison County, Defendant was found guilty of especially aggravated robbery, conspiracy to commit especially aggravated robbery and possession of a deadly weapon with the intent to employ in the commission of an especially aggravated robbery. Subsequently, the trial judge merged the deadly weapon conviction with the especially aggravated robbery conviction and dismissed the conspiracy charge. The Defendant was sentenced to serve fifteen (15) years as a Range I Standard Offender. Defendant presents four (4) issues to this court: (1) the evidence was insufficient as a matter of law to support the jury's verdict; (2) the trial court abused its discretion in interrupting and limiting cross-examination of the victim regarding his past drug use; (3) the trial court committed plain error in allowing his secretary to read the last portion of the instructions to the jury; and (4) the trial court committed plain error by omitting the words "prejudice or" from the verbal jury instructions. We affirm the judgment of the trial court.

## I. SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S.

307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

In the early morning hours of August 19, 1995, Harden Randy Hicks, the victim, took a coworker home to Parkview Court Apartments after work. When he pulled into the parking lot sometime shortly after midnight, Hicks saw the Defendant. Hicks was able to identify the Defendant as he had known him all of Defendant's life and worked with him at a landscaping service. After Hicks dropped off his coworker, Defendant approached the victim's truck and wanted to talk, but Hicks could not understand what Defendant was saying. The next thing Hicks observed were two black males approach him with one of them holding a gun. This individual pointed the gun to Hicks' forehead and stated, "We want your money." When Hicks asked Defendant what was happening,

Defendant replied, "You heard him. We want your d--- money." Hicks reached in his pocket and gave them twenty dollars ($20.00).

Defendant took possession of the gun, cocked it and put it to Hicks' forehead saying, "We want all your money." When Hicks reached into his pocket to give Defendant his wallet, Defendant shot him. Momentarily blinded, Hicks thought he had been shot in the face. He heard only one shot and then pitched his wallet to the ground. All three of the men reached for it, and then they ran behind the apartment building. When Hicks started to get out of his truck to get help, he saw blood running down his arm. He was afraid the Defendant would return to kill him because there was no money in his wallet, so he got back in his truck and drove to his home two (2) miles away. After he arrived there, he asked his wife to call 911. Hicks testified that he was in fear for his life during the incident and that he began to experience pain from his wounds by the time he arrived at the hospital.

During cross-examination, Hicks admitted to using drugs in the past but denied that he currently used drugs, denied that he purchased drugs from the Defendant at any time, and denied that he owed Defendant any money.

Linda Jeanette Hicks, the victim's wife, testified that at approximately 12:25 a.m. on August 19, 1995, she heard someone beating on her door. She heard her husband's voice saying, "Linda, Linda, open the door. I've been shot." When she opened the door, Hicks "just fell in." After she raised his bloody t-shirt to find out where he had been shot, she called 911.

Robert Jerry Stephenson, an emergency medicine physician, testified that he was working on August 19, 1995, and treated Hicks. There was a "through and through" gunshot wound to Hicks' left bicep and an entrance wound to the left side of his chest. While Hicks' vital signs were stable, Doctor Stephenson could feel a bullet underneath the skin near the spine. According to the doctor, these wounds were consistent with a patient feeling extreme physical pain. Hicks was taken to surgery following Stephenson's initial treatment.

George Pruitt and Jeff Austin, officers of the Jackson Police Department, investigated the shooting. They testified that they were both on duty during the early morning hours of August 19, 1995. Officer Pruitt responded to the victim's residence and followed him to the hospital where he took photographs of Hicks' wounds. Officer Austin investigated in the Parkview Courts parking area where he found a spent casing for a .380 caliber gun within two (2) inches of a small pool of blood. He found these in a handicapped parking area just west of Buildings 233-35.

Defendant testified that he was in Parkview Courts selling drugs on the evening of August 18, 1995. He first saw Hicks when he came to Parkview off of an adjoining street. While standing at the mailbox with a friend named Lucky, Hicks asked to meet with him. He got into the truck with Hicks, and they discussed the twenty dollars ($20.00) Hicks owed Defendant for drugs. Hicks gave him the money and asked if Defendant had anything to sell him. When he said no, Hicks left and Defendant did not see him anymore.

In viewing the evidence in the light most favorable to the State, there is more than sufficient evidence to support the conviction of Defendant for especially aggravated robbery, which is robbery accomplished with a deadly weapon where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403. Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401.

Evidence at trial showed that the victim was forced at gunpoint to give Defendant and two other men twenty dollars ($20.00). He was shot by the Defendant after he demanded "all his d--- money." The victim confirmed that he was experiencing pain by the time he arrived at the hospital. Dr. Stephenson stated that Hicks' injury was of the type to cause extreme physical pain, which constitutes serious bodily injury under Tennessee Code Annotated § 39-11-106(33). "Serious bodily injury" is also defined by this statute as a bodily injury with "a substantial risk of death." The proof shows that the bullet entered and passed through the victim's arm prior to entering his chest area and stopped very near the spine. Upon review of this record, there was more than sufficient evidence to permit a rational trier of fact to find the elements of especially aggravated burglary beyond a reasonable doubt. The Defendant has not met his burden in establishing the insufficiency of the evidence, and this issue has no merit.

## II. LIMITATION AND INTERRUPTION OF CROSS-EXAMINATION

The trial court permitted Defendant's counsel to cross-examine the victim regarding "drug use" to the extent that the victim admitted he had used drugs in

the past. The victim also testified that he did not currently use drugs, and he denied buying drugs from the Defendant. In this appeal, the Defendant complains that the trial court would not allow Defendant to ask the victim if he had ever purchased drugs from anyone else in Parkview Court Apartments. The control of cross-examination of witnesses rests within the sound discretion of the trial court. State v. Thomas, 755 S.W.2d 838, 843 (Tenn. Crim. App. 1988). Whether evidence is admissible or not is in the discretion of the trial judge and will not be disturbed unless there is clear evidence of abuse of that discretion. State v. West, 737 S.W.2d 790, 793-94 (Tenn. Crim. App. 1987).

Defendant was allowed to elicit on cross-examination that the victim had previously used drugs and whether or not he had ever purchased drugs from the Defendant. We do not see how it is relevant in the proceedings of this particular trial whether or not the victim had purchased drugs from other individuals at the Parkview Court Apartments, and therefore hold that the trial court was correct in not permitting this line of inquiry.

Defendant further complains that the trial court interrupted cross-examination of the victim on other occasions and committed error by comments the trial court made during the cross-examination of the victim.

We note from the record that during one of the of incidences complained of by the Defendant, the trial court gave the Defendant the opportunity to make an offer of proof. There is nothing in the record to reflect that Defendant made any offer of proof of what line of inquiry should have been allowed that was not permitted. At this particular point in the cross-examination, Defendant's counsel

was attempting to question the victim about the number of people that were located outside at the Parkview Court Apartments on the night of the incident. Without an offer of proof being made by the Defendant, this particular matter is waived. T.R.A.P. 36(a).

Defendant also complains about the trial court interrupting counsel by stating that counsel had asked multiple questions at once, and should ask one question at a time. Our review of the record reflects that the trial judge was correct in this ruling.

In addition, Defendant complains that the trial court interrupted cross-examination of the victim when he had been called back as a rebuttal witness. The trial court made comments inquiring of counsel whether or not the questions had already been asked, and when given an explanation by defense counsel, the trial court allowed the Defendant's cross-examination to proceed. There was no error in this action by the trial court.

Finally, Defendant complains about the following comments of the trial court during cross-examination of Mr. Hicks:

DEFENSE COUNSEL: It was probably one-thirty before you got to the hospital you say?

VICTIM: Yes.

DEFENSE COUNSEL: Sir, if you've known [Defendant] nearly all of his

| | |
|---|---|
| | life, why would the Defendant rob you, do you know? |
| VICTIM: | That's what I never could figure out. |
| DEFENSE COUNSEL: | And, sir, you've used drugs in the past? |
| VICTIM: | Yes. |
| THE COURT: | Ask him if he was using drugs then if you want to. |
| DEFENSE COUNSEL: | I'll leave it there, Your Honor. |
| THE COURT: | All right. Ask him if he's had a drink of whiskey sometime or something like that. |
| DEFENSE COUNSEL: | Nothing further, Your Honor. |

It is correct that a trial court must be careful not to express any thought or make any statement that might cause a jury to infer that the judge is in favor of, or against the Defendant in a criminal case, State v. Cazes, 875 S.W.2d 253, 260 (Tenn. 1994), cert. denied, 115 S.C. 743 (1995). Therefore, we view the above statements by the trial court as improper.

The comments made by the trial court could be taken by the jury as an indication by the trial judge to not take seriously the cross-examination by

defense counsel. Questions by the trial court should be limited to clarifying points which may seem to be obscure and in supplying omissions which the interest of justice demand. See State v. Jenkins, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987). This would necessarily include situations, such as in the case sub judice, where the trial court suggests to counsel questions that he or she may want to ask.

However, any error was harmless beyond a reasonable doubt. T.R.Crim.P. 52.

## III. TRIAL JUDGE'S FAILURE TO READ ALL JURY INSTRUCTIONS

Defendant argues the trial court erred by allowing his secretary to read the final portion of instructions to the jury. From the record, it is evident that the trial judge asked his secretary to read the remainder of the charge due to his sore throat. The trial court specifically stated "Ladies and gentlemen, due to my throat, I'm going to let her read the rest of this. It'd be just as if I read it."

Defendant did not object to this at trial, nor did he raise this issue in his motion for a new trial. He now asserts that appellate review is proper because the trial court's actions were plain error under Rule 52(b), Tennessee Rules of Criminal Procedure. Before an error may be recognized pursuant to Rule 52(b), the error must be "plain" and affect a "substantial right" of the accused. State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). A plain error is especially egregious in that it strikes at the fairness, integrity or public reputation of judicial proceedings. Id. A substantial right is a right of fundamental

proportions in the indictment process, in the proof of each element of the offense, and constitutional in nature.  Id.  To determine whether an error constitutes plain error, the following factors apply:

a) the record must clearly establish what occurred in the trial court;
b) a clear and unequivocal rule of law must have been breached;
c) a substantial right of the accused must have been adversely affected;
d) the accused did not waive the issue for tactical reasons; and
e) consideration of the error is necessary to do substantial justice.

Id. at 641-42.

In consideration of the above factors, the trial court's failure to read the entire charge to the jury does not rise to the level of plain error.  In light of the evidence against the Defendant, the secretary's reading a portion of the jury instructions did not affect the fairness or the integrity of the trial, particularly since the trial court instructed the jury that her reading would be just as if he read the charge.  The presumption is that a jury follows the instructions of the trial court. State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983); Craig v. State, 524 S.W.2d 504, 508 (Tenn. Crim. App. 1974).  While this court cannot condone the actions of the trial court, except under extreme circumstances, there is no evidence that the jury did not follow the judge's instructions.  Any error was harmless beyond a reasonable doubt.  T.R.Crim.P. 52(a).  This issue is without merit.

IV.  OMISSION OF COMPLETE JURY INSTRUCTIONS

Defendant argues that the omission of the words "prejudice or" from the trial court's verbal instructions to the jury constituted plain error.  Since there was neither objection made nor a special request tendered, the form or fullness of the

jury instructions are ordinarily not appropriate issues for appellate review. State v. Cravens, 764 S.W.2d 754, 756-57 (Tenn. 1989). Questions concerning the instructions are generally deemed to be waived in the absence of objection or special request, unless they contain plain error. Id. at 757.

The correctness or fairness of a particular wording of a jury instruction must be determined from a full reading of the instructions and not solely from excerpts. State v. Elendt, 654 S.W.2d 411, 414 (Tenn. Crim. App. 1983); Martin v. State, 542 S.W.2d 638, 642 (Tenn. Crim. App. 1976). In this instance, Defendant objects to the omission of the words "prejudice or" from the reading of the following:

> You can have no *prejudice or* sympathy, or allow anything but the law and the evidence to have any influence upon your verdict. You must render your verdict with absolute fairness and impartiality as you think justice and truth dictate.

Tennessee Pattern Jury Instructions, Criminal 43.04.

Within the jury instructions, the jury was informed: (1) to give the evidence introduced by the State and the Defendant a full, fair, and impartial consideration, (2) to make an impartial consideration of the evidence with fellow jurors, (3) to render the verdict with absolute fairness and impartiality as justice and truth dictate, and (4) that the jury was to allow nothing but the law and the evidence to have any influence upon the verdict.

The omission of the words "prejudice or" in the charge to the jury does not rise to a level of plain error which would require a reversal of the judgment under Rule 52(b) of the Tennessee Rules of Criminal Procedure. It does not meet the

-12-

criteria of <u>State v. Adkisson</u>, 899 S.W.2d at 641-42 discussed <u>supra</u>. The omission did not affect the fairness or integrity of the trial, nor did it affect a substantial right of the Defendant. This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Judge


_____
JOHN H. PEAY, Judge