# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned On Briefs February 1, 2011

## STATE OF TENNESSEE v. MARQUIS DEVEREAUX HALL

**Appeal from the Criminal Court for Montgomery County**
**No. 40801123     John H. Gasaway, Judge**

———————————

**No.  M2010-00711-CCA-R3-CD - Filed August 12, 2011**

———————————

Appellant, Marquis Devereaux Hall, pled guilty to aggravated assault, reckless endangerment, possession of cocaine, simple possession and casual exchange of marijuana, and theft under $500.  The trial court sentenced him to an effective sentence of ten years on community corrections.  After his arrest for possession of a weapon, felon carrying a firearm, and theft, his supervisor filed a violation warrant.  The trial court held a hearing and concluded that Appellant had violated the conditions of his community corrections sentence. The trial court imposed Appellant's sentence of ten years.  Appellant appeals the trial court's revocation of his community corrections sentence.  After a thorough review of the record, we conclude that the trial court did not abuse its discretion.  Therefore, we affirm the trial court's revocation of Appellant's community corrections sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee for the appellant, Marquis Devereaux Hall.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; John Carney, District Attorney General; and John Finklea, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

At the September 2008 term, Appellant was indicted by the Montgomery County Grand Jury for aggravated assault; reckless endangerment; possession of a controlled

substance, cocaine, with intent to manufacture, deliver or sell; possession of a controlled substance, marijuana; possession of a firearm during commission or attempt to commit a dangerous felony; and theft of property. Appellant pled guilty to aggravated assault, reckless endangerment, possession of cocaine, simple possession and casual exchange of marijuana, and theft under $500. The firearm charge was dismissed. On April 9, 2009, the trial court sentenced Appellant to six years on community corrections for aggravated assault, two years on community corrections for reckless endangerment, ten weekends in the county jail and ten years on community corrections for possession of cocaine, fifty-eight days in the county jail for possession of marijuana, and fifty-eight days in the county jail for theft of property under $500. The sentences for aggravated assault, reckless endangerment, and possession of cocaine were ordered to be served concurrently.

On January 14, 2010, Appellant's community corrections supervisor filed a warrant alleging a violation of community corrections. According to the warrant, Appellant was arrested on January 12, 2010 for new charges consisting of possession of a weapon, felon carrying a firearm and theft of property. On February 24, 2010, the trial court held an evidentiary hearing on the community corrections violation warrant.

At the hearing, Donald Wilkerson, Appellant's community corrections supervisor, testified. He stated that Appellant had been under his supervision since April 9, 2009, when Appellant was sentenced. He stated that he filed a violation warrant because Appellant was arrested for new charges, namely theft and carrying a weapon. Other than the arrest, Appellant was in full compliance with the conditions of his community corrections sentence.

Officer Dominick Sacco testified regarding the facts leading to Appellant's arrest. Officer Sacco testified that he was employed with the Clarksville Police Department. He stated that the evening of November 4, 2009, he was driving down Chapel Street when he noticed a chair being flung off of a porch and someone running away from a house. He stopped and went to the house. Once at the house, he received permission to search the house from the homeowner. Appellant was present at the house when Officer Sacco arrived. The officer searched the kitchen area first. He explained that when he reached the house, he could see through the blinds, and he saw an individual doing something in the kitchen. Officer Sacco could not identify Appellant as that individual. During the search of the kitchen, he found a Sig Sauer pistol with some bullets and a clip. While Officer Sacco was dealing with a third individual, Appellant "scooted out and left."

Detective Michael Ulrey is also employed by the Clarksville Police Department. He was assigned to investigate the incident on Chapel Street. Detective Ulrey was involved because the weapon found during the search had been stolen during a burglary he was investigating at the time. Appellant's name was mentioned by several witnesses with whom

Detective Ulrey spoke during his investigation. Detective Ulrey interviewed Appellant. He testified to the following exchange with Appellant:

> [Appellant] stated to me that a subject that was there approached him to sell him the weapon, that he had seen the weapon in the past and was looking at it at this time, handled the weapon, stated that the individual wanted three hundred dollars, that he knew that weapon was only worth a hundred and fifty on the streets and that he wasn't willing to give him three hundred dollars for it, so he gave it back to him.

During his investigation, Detective Ulrey was told by two individuals that Appellant kept the weapon in his possession for two days while he was deciding whether to purchase the weapon. One witness had a criminal record and the other had no criminal record.

At the conclusion of Detective Ulrey's testimony, the trial court asked the detective to testify regarding what Appellant had specifically told him during his investigation. The detective responded in the following manner:

> Yes, sir, [Appellant] stated to me that he had seen the weapon in the past at other locations he had been, so he was fairly familiar with the weapon and that he had known it had been taken from what he referred to "a lick", which is some sort of criminal activity, typically a burglary and that he had discussed purchasing it in the past and this night specifically, he had - - was going to buy it or looked at it to buy it, was holding it and said his fingerprints would be on it, because he was holding it, looking at it, considering buying it but the [seller] wanted three hundred dollars for it. [Appellant] knew that this weapon was only worth a hundred and fifty dollars on the streets, so he was not willing to pay him three hundred dollars, which was the asking price that night.

At the conclusion of the hearing, the State argued that the evidence that the Appellant, a convicted felon, handles the weapon and considered purchasing it, was sufficient to show that the Appellant possessed a firearm in violation of the terms of his community corrections sentence. The trial court made the following findings when making its decision:

> Okay, before me today is a Community Corrections violation matter, where the [Appellant] has been arrested for possession of a weapon. I have heard proof. I am not just considering the mere arrest. The officers have come

to testify and the Detective made it very clear that this [Appellant] had seen this weapon at other locations. He was familiar with it. He had to have handled it when he discussed purchasing it and he looked at it to buy it. You know, I don't know what anybody considers possession, but that is possession in the strict sense, that he had direct control over this weapon and he was looking to buy it.

. . . I agree – [Appellant], you have been granted a privilege by being placed on Community Corrections instead of being sent to the penitentiary. So, you are out there discussing buying a weapon as a convicted felon. That's from your own mouth, and even the fact that you handled it then in discussing to buy it, the fact that you left the residence there without talking to the police officers, I am considering the fact that these other witnesses say you had it for two days, but that is not dispositive, that's not controlling in my ruling. What controls my ruling is the fact that you left there, you didn't stick around, and you admitted that you handled it, you discussed purchasing it and it wasn't the value that you thought it would be?

. . . [I]f you are out there and you are going to buy a weapon, then Community Corrections and alternative sentencing is not the place for you.

I find that you have violated the terms of your Community Correction[s] by a preponderance of the evidence, in looking to buy this weapon, in handling the weapon, in considering the street value and so forth, you had control over the weapon at one point. I am not going to have that. You are in violation of your Community Correction[s] sentence and your entire ten years will be imposed. You will be in custody.

Appellant filed a timely notice of appeal.

## ANALYSIS

On appeal, Appellant argues that the trial court abused its discretion by revoking Appellant's community corrections sentence because the trial court improperly considered hearsay testimony and because the State failed to prove that he violated the conditions of his community corrections sentence.

The Community Corrections Act of 1985 was designed to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." T.C.A. § 40-36-103(1). The community corrections

sentence provides a desired degree of flexibility that may be both beneficial to the defendant and serve legitimate societal aims. *State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements, however, the defendant is not necessarily entitled to a community corrections sentence as a matter of law or right. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Once a defendant violates the terms of his community corrections program, the trial court may revoke the sentence and impose a new one:

> The court shall also possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in the community-based alternative to incarceration.

T.C.A. § 40-36-106(e)(4). In other words, the trial court may conduct a sentencing hearing, and may impose a greater sentence than the original sentence. *Griffith*, 787 S.W.2d at 342; *State v. Cooper*, 977 S.W.2d 130, 132 (Tenn. Crim. App. 1998).

In *State v. Harkins*, 811 S.W.2d 79 (Tenn. 1991), our supreme court ruled that a community corrections sentence is so similar to a probationary sentence as to require the application of the same standard of review. Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. T.C.A. § 40-35-311(e); *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated the terms of his sentence. *Harkins*, 811 S.W.2d at 82 (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978)); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Relief can be granted only when "'the trial court's logic and reasoning were improper when viewed in the light of the factual circumstances and the legal principles involved.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). It is incumbent upon the trial judge to exercise a conscientious and intelligent judgment. *See State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

Hearsay Testimony

Appellant argues that the trial court erred in hearing Detective Ulrey's testimony regarding the other two witnesses who stated that Appellant had kept the weapon for two days. The State argues that this issue is waived because Appellant failed to object to Detective Ulrey's testimony at the hearing.

Typically, a defendant's failure to make a contemporaneous objection during trial constitutes a waiver of an issue. Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a) (stating that "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn. 1989). After a review of the record, we agree with the State. Appellant made no objection to the introduction of the testimony at issue. Therefore, he cannot successfully raise this issue on appeal.

Revocation

Appellant argues that the State did not present proof to support the trial court's finding that Appellant was in possession of a weapon. A community corrections sentence may be revoked based upon pending charges. *State v. Andrew B. Edwards*, No. W1999-01095-CCA-R3-CD, 2000 WL 705309, at *3 (Tenn. Crim. App., at Jackson, May 26, 2000), *perm. app. denied,* (Tenn. Sept. 11, 2000). However, the mere fact of an arrest or an indictment cannot be the sole basis for the revocation. *Id.* The State must provide evidence "in order to establish the . . . commission of another offense." *Id.* In other words, the State must produce evidence "to establish that the defendant committed the offense with which he has been charged." *State v. Lontrell Williams*, No. W2009-00275-CCA-R3-CD, 2009 WL 3518171, at *3 (Tenn. Crim. App., at Jackson, Oct. 30, 2009).

Detective Ulrey testified that Appellant specifically told him that he had looked at the weapon to buy it and had held it. Appellant admitted to Detective Ulrey that his fingerprints would be on the weapon. Appellant points out that the weapon was mishandled at the scene, so the officers did not test for fingerprints. However, this does not negate the fact that Appellant admitted to Detective Ulrey that he had handled the weapon. The trial court stated that it was relying mostly on Appellant's statements to the detective when it concluded that Appellant had possessed a weapon in violation of the conditions of his community corrections sentence.

Therefore, we conclude that the trial court did not abuse its discretion by revoking Appellant's community corrections sentence. Appellant has failed to show that there is a

lack of substantial evidence to support the trial court's determination that he was in possession of a weapon. There was sufficient evidence presented at the revocation hearing to support the trial court's conclusions.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's decision to revoke Appellant's community corrections sentence.


_____
JERRY L. SMITH, JUDGE