

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2017 Session

## STATE OF TENNESSEE v. MICHAEL C. BOLDEN

**Appeal from the Criminal Court for Morgan County**
**No. 2013-CR-13     E. Eugene Eblen, Judge**

### No. E2016-01266-CCA-R3-CD

The defendant, Michael C. Bolden, appeals his Morgan County Criminal Court jury conviction of aggravated rape of a child, claiming that the evidence was insufficient to support his conviction and that the trial court erred by failing to instruct the jury on rape of a child as a lesser included offense. We affirm the conviction and sentence but remand for correction of a clerical error in the judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

C. Brad Neff, Jamestown, Tennessee, for the appellant, Michael C. Bolden.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Russell Johnson, District Attorney General; and Alyson Kennedy and Robert Edwards, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In January 2013, the Morgan County Grand Jury charged the defendant with one count of aggravated rape of a child. The trial court conducted a jury trial in June 2015.

The State's proof at trial showed that the victim, C.H.,[1] resided in Morgan County with his mother, A.H.,[2] in September 2012. A.H. testified that the victim was

---

[1]    It is the policy of this court to refer to minors by initials.
[2]    To protect the anonymity of the minor victim, we will refer to his mother by her initials as well.

born on December 17, 2009, and that he was three months shy of his third birthday on September 10, 2012.

A few days prior to September 10, the victim was accidentally run over by a vehicle in a library parking lot but fortunately sustained only minor injuries. On September 10, the defendant paid a visit to A.H.'s residence to "check on" the victim's well-being. The defendant sat on the floor of the living room and helped the victim play with some toy trucks. After a few minutes, the victim decided to play in his bedroom, and the defendant asked A.H. if he could assist the victim in carrying the toys to the victim's bedroom; A.H. acquiesced and followed them. While A.H. was standing outside of the victim's bedroom, her husband requested her assistance in locating an item, and A.H. walked away "for maybe a minute, minute and a half." When she returned to the victim's bedroom, she saw the defendant "sticking his [penis] in my kid[']s mouth." A.H. stated that the defendant had one of his hands on the victim's head and that he was using his other hand to hold his penis.

A.H. testified that she immediately "started screaming," and the defendant replied that he "wasn't doing nothing," although A.H. could "clearly see his pants were unbuttoned." A.H.'s husband "had to force [the defendant] out of the whole house," and the defendant was "screaming I'm sorry, I'm sorry, I didn't mean to." When police officers arrived at the house, the defendant continued "screaming I'm not right in the head, I didn't mean to, I wasn't right, I didn't mean to do it."

A.H. admitted that she had been previously convicted of attempted forgery, misdemeanor theft, misdemeanor criminal impersonation, and possession of less than half a gram of methamphetamine and that she was currently serving a jail sentence in Cumberland County. A.H. clarified that all of her criminal convictions had occurred after the rape of the victim.

On cross-examination, A.H. stated that, when she reentered the victim's bedroom, the defendant was on his knees, and A.H. was adamant that she saw the defendant's penis inside the victim's mouth. A.H. denied using any drugs on September 10, 2012, and testified that she did not begin using methamphetamine until after the victim's rape. A.H. denied that the victim had a history of grabbing men in the crotch. A.H. confirmed that she had contacted Mark and Linda Peterson shortly after the rape occurred, explaining that she had met the defendant through the Petersons and that she wanted to inform them of what had transpired because the defendant "would slip off into the bedroom" with the Petersons' children on prior occasions.

Morgan County Sheriff's Department ("MCSD") Chief Deputy Steve Cochran testified that he interviewed the defendant on September 12, 2012. Chief

Cochran provided the defendant with his *Miranda* warnings, and the defendant signed a waiver of his rights and agreed to speak with Chief Cochran. At that time, the defendant admitted that he had placed his penis in the victim's mouth. Chief Cochran asked the defendant "what made [him] excited . . . about the child," and the defendant replied that "he was excited and turned on by" seeing the victim "in his diaper." The defendant denied that he had committed any other sexual assaults or that "little boys turned him on" prior to his assault of the victim. Following the interview, Chief Cochran asked the defendant to give a handwritten statement, and the defendant complied, writing that he "went to his bedroom to play with him then after [I] played with him [I] stuck my penis in his mouth."

On cross-examination, Chief Cochran admitted that no video or audio recording of his interview with the defendant existed. Chief Cochran acknowledged that he did not inquire about the defendant's educational background but stated that he had read the *Miranda* warnings aloud to the defendant "just in case" the defendant was unable to read. Chief Cochran conceded that the defendant had not signed his handwritten statement, which was on the back side of the rights waiver form which he had signed.

On redirect examination, Chief Cochran stated that he had given "hundreds" of interviews and *Miranda* warnings throughout his career in law enforcement and that he was able to discern when an interviewee understands the questions being asked of him. Chief Cochran had "no question" about the defendant's ability to understand his rights.

Kingston Police Department Officer Brian Luttrell testified that in September 2012 he was employed as an MCSD corrections officer. Officer Luttrell was present during Chief Cochran's interview of the defendant, and he described the defendant's statements as follows:

> He stated that the little boy had been in an accident, was injured and had just got home from the hospital. He went over to see him. He went into the back room and was playing with him, I think with some toy cars. And they were back there by their self [sic]. He stated that the little boy being injured and he was wearing a t-shirt and a diaper and that, in some way, aroused him. Then he forced himself into the little boy's mouth.
>
> . . . .
>
> He forced his penis into the little boy's mouth.

Officer Luttrell testified that he witnessed the defendant's signing of the rights waiver form and that he was present when the defendant handwrote his statement.

With this evidence, the State rested. The defendant then elected to testify and to present proof.

Kathy Bolden, the defendant's mother, testified that the defendant suffered from a learning disability, explaining that he "had to have special learning all the way through school" and had received "a special learning diploma." Ms. Bolden elaborated, explaining that "[y]ou have to keep telling him in detail what you want him to do" and that, in school, he struggled with "comprehension and speech." Ms. Bolden testified that the defendant disliked conflict and violence and that she was unaware of any prior history of sexual assault on the defendant's part.

Rob Wall, Ms. Bolden's boyfriend, described himself as a pseudo-stepfather to the defendant. Mr. Wall testified that the defendant was "a little slow" and "doesn't comprehend things" quickly. On cross-examination, both Mr. Wall and Ms. Bolden testified that the defendant knew the difference between right and wrong.

Steven Bolden, the defendant's younger brother, testified that the defendant was "a little autistic" and had "a short fuse" with respect to conflict. Mr. Bolden recalled one occasion on which the victim had "grabbed" him by "his privates."

Linda Peterson testified that she had become acquainted with the defendant when Steven Bolden began dating Ms. Peterson's roommate. Ms. Peterson stated that she did not know the defendant "that well," explaining that he had visited her house on prior occasions and that he had played with her children. Ms. Peterson explained that the victim was a year younger than her youngest child and stated that the victim "couldn't talk" and would "hit" people to get what he wanted. Ms. Peterson testified that she had observed the victim strike people in the crotch on prior occasions.

With respect to the victim's rape, Ms. Peterson recalled that A.H. had called her on September 10 to inform her that the defendant "had molested" the victim. According to Ms. Peterson, A.H. was hysterical and told her that she had seen the victim "right at [the defendant's] crotch area." Ms. Peterson stated that, after the rape, A.H. was inconsistent in her description of the assault:

> One time he's on his knees. The next time he was standing up. It didn't happen, it did happen. She never could tell the same story.

- 4 -

The defendant testified and categorically denied engaging in any sexual contact with the victim. According to the defendant, he had been at the local library on September 10, 2012, conducting research on a "truck driving job" when he noticed A.H. at the library. As he was walking home, it occurred to him that he should speak with A.H.'s husband about a job, so he walked to A.H.'s residence. Upon his arrival, he encountered A.H. standing by her mailbox. She told him about the victim's recent accident and asked the defendant if he would like to see the victim. The defendant said that he would, explaining to the jury that he "used that excuse to ask [A.H.'s husband] about" a job.

Once inside, the defendant sat in the living room and chatted with A.H. while the victim played in the floor and A.H.'s husband sat nearby. Because A.H.'s husband "never spoke" to the defendant, the defendant became uncomfortable and asked A.H. if he "could go check on the little boy's toys." A.H. responded in the affirmative, and the defendant proceeded to the victim's bedroom. While the victim was playing on the floor with his toys, the defendant's cellular telephone "vibrated," and the defendant removed the telephone from his pocket. Upon spotting the telephone, the victim advanced toward the defendant and attempted to grab the telephone but missed and struck the defendant in the area of his crotch. The defendant moved the victim's hand away and instructed him not to do that again. The victim then sat down in the floor, resumed playing, and pointed to the upper area of the closet where the victim's trucks were located. When the defendant was attempting to retrieve the trucks, A.H. appeared. She removed the victim from the bedroom, and her husband "escorted" the defendant from the house. A.H. then walked outside while speaking on her cellular telephone, stating that the defendant was "down here trying to put his [penis] in [the victim's] mouth."

When the defendant arrived at the jail, officers forced him "to strip down in front of a bunch of people" and informed him that he was being charged with aggravated rape of a child; he testified that he did not know what "aggravated" meant at that time. The defendant claimed that Officer Luttrell "harass[ed him] verbally" throughout the night. When Officer Luttrell brought him to Chief Cochran's office, Chief Cochran read the *Miranda* rights to the defendant and asked him if he understood his rights. The defendant testified that he did not respond because he was "so scared." He stated that he wrote the statement for the officers "out of fear, not guilt," believing that the officers "would leave [him] alone." The defendant testified that he merely wrote a statement of what he was being accused of rather than what had actually transpired.

Chief Cochran testified on rebuttal for the State and denied telling the defendant what to write in his statement. Chief Cochran stated that the defendant never denied assaulting the victim and that the defendant even volunteered the detail about the

victim's diaper causing him to be aroused. With respect to the defendant's claim that Officer Luttrell had verbally harassed him, Chief Cochran explained that Officer Luttrell could not have worked an overnight shift at the jail and then been present the following morning to assist in the the defendant's interview.

Based on this evidence, the jury convicted the defendant as charged of one count of aggravated rape of a child. Following a sentencing hearing, the trial court sentenced the defendant as a deemed Range III offender to a term of 40 years' incarceration to be served at 100 percent by operation of law.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the evidence is insufficient to support his conviction and that the trial court erred by failing to instruct the jury on rape of a child as a lesser included offense. We will address each issue in turn.

*I. Sufficiency*

The defendant first contends that the evidence is insufficient to support his conviction of aggravated rape of a child. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[a]ggravated rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim if the victim is three (3) years of age or less." T.C.A. § 39-13-531(a). "Sexual penetration" is defined as

"sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7).

In the instant case, the proof at trial established that the defendant inserted his penis into the two-year-old victim's mouth. A.H. testified that she witnessed this assault, and the defendant admitted to Chief Cochran and Officer Luttrell that he had become "aroused" by the sight of the toddler in a diaper, resulting in his placing his penis inside the victim's mouth. Although the defendant denied the rape and claimed that he was "intimidated" into confessing to the crime, such matters of witness credibility and evidentiary weight are within the exclusive province of the trier of fact, and this court will not reweigh such evidence. *See Dorantes*, 331 S.W.3d at 379.

The defendant primarily takes issue with the evidence of the victim's age, claiming that "there was minimal and somewhat conflicting evidence of the age of the child at the time of the incident." To the contrary, the victim's mother, A.H., testified that the victim was born on December 17, 2009; thus, the victim was one week shy of two years and nine months when the rape occurred on September 10, 2012. Furthermore, a review of the trial transcript reveals that A.H. referenced the victim's being two years of age no less than nine times during the course of her testimony.

Viewing this evidence in the light most favorable to the prosecution, we find that the evidence adduced at trial overwhelmingly supports the defendant's conviction of aggravated rape of a child.

*II. Jury Instruction*

The defendant contends that the trial court erred by failing to instruct the jury "on the lesser included offense of Rape of a Child." Again, we disagree.

Nothing in the record suggests that the defendant contemporaneously objected to the trial court's failure to include an instruction on rape of a child, and thus, he has waived our consideration of this issue. A defendant complaining of the omission of an instruction must make a special request that the instruction be given or otherwise object to the omission. *See* Tenn. R. Crim. P. 30(a), (b); *State v. Cravens*, 764 S.W.2d 754, 757-78 (Tenn. 1989); *State v. Haynes*, 720 S.W.2d 76, 84-85 (Tenn. Crim. App. 1986); *Bolton v. State*, 591 S.W.2d 446, 448 (Tenn. Crim. App. 1979). In addition, neither a transcript of the trial court's charge to the jury nor the written jury instructions are included in the record. The appellant bears the burden of preparing an adequate record on appeal, *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993), which includes

the duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," Tenn. R. App. P. 24(b). If the appellant fails to prepare an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993).

Furthermore, the scant reference to jury instructions in the trial transcript reveals that both the State and the defense agreed on the pertinent instructions to be given. Just prior to the return of the jury to the courtroom and the reading of the verdict, the trial court made the following announcement:

> All right, for the record we had a chambers meeting going over the jury instructions for this case and determined that with both sides that the proper charge would be the Aggravated Rape Of A Child, and as a lesser included Aggravated Sexual Battery. And that that would complete the part on the charge.

In any event, an instruction on rape of a child would have been improper in this case because rape of a child is not a lesser included offense of aggravated rape of a child. An offense is considered a lesser included offense if it contains all of the statutory elements of the offense charged, if it involves the facilitation, attempt, or solicitation of the offense charged, or if it is specifically designated as a lesser included offense by statute. T.C.A. § 40-18-110(f). In addition, an offense is lesser included if it differs from the charged offense only in that it requires a less culpable mental state or requires a less serious harm or risk of harm to the same victim. *See State v. Howard*, 504 S.W.3d 260, 268-75 (Tenn. 2016) (citing *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999)).

Here, the defendant was convicted of aggravated rape of a child, which is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is three (3) years of age or less." T.C.A. § 39-13-531(a). Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a).

Clearly, rape of a child is not a lesser included offense of aggravated rape of a child. The latter offense requires that the victim be three years of age or less; the former requires that the victim be over the age of three but less than the age of 13. Because these two statutes each require a different element, *i.e.*, a victim of a different age, rape of a child cannot be a lesser included offense of aggravated rape of a child. *See* T.C.A. § 40-18-110(f)(1). Certainly, the instant offense does not involve facilitation,

attempt, or solicitation nor has it been specifically designated by statute as a lesser included offense. *See id.*, § 40-18-110(f)(2)-(4); (g)(1)-(4). Finally, a differing mental state or lesser risk of harm is not applicable in the instant case. *See Howard*, 504 S.W.3d at 268.

Accordingly, no error attends the trial court's failure to charge the jury as to rape of a child.

### *III. Correction of Clerical Error*

Although not raised by either party, we detect an error that requires correction in the judgment. Based on the transcript of the sentencing hearing, the defendant had no prior criminal history, and the prosecutor announced to the trial court that the defendant was a "range one, standard offender." The court and the parties all agreed that, by statute, the defendant must be sentenced as a Range III offender. *See* T.C.A. § 39-13-531(b) ("Aggravated rape of a child is a Class A felony and shall be sentenced within Range III, as set forth in title 40, chapter 35.").

On the judgment form, however, the trial court checked the box for "Multiple" in the offender status section, although the court correctly checked the box for "Child Rapist 100%" in the release eligibility section. Without question, the defendant is not a multiple offender, and although the defendant is considered a Range III offender by statute due to the severity of the conviction, he is not a persistent offender. *See* T.C.A. § 40-35-107(a). We believe the trial court was attempting to communicate that the defendant was a Range III offender, and simply erroneously checked the box for "Multiple" rather than "Persistent" in the offender status section. However, no section on the judgment form merely indicates a defendant's sentencing range. On remand, the trial court should amend the judgment to remove the multiple-offender designation and replace it with an asterisk to direct the reader to the special conditions box. In that box, the trial court should indicate that the defendant is deemed a Range III offender pursuant to the terms of T.C.A. § 39-15-531(b).

Accordingly, on remand, the trial court shall enter an amended judgment to remove the designation of offender status as "Multiple."

### *Conclusion*

Based upon the foregoing analysis, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE