IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs January 8, 2013

**STATE OF TENNESSEE v. ANDRE BENSON**

**Appeal from the Criminal Court for Shelby County**
**No. 09-05910   James C. Beasley, Jr., Judge**

---

**No.  W2011-02566-CCA-R3-CD  - Filed August 2, 2013**

---

Appellant, Andre Benson, was indicted by the Shelby County Grand Jury in July of 2009 with aggravated robbery and especially aggravated kidnapping.  After a jury trial, Appellant was convicted of the offenses as charged in the indictment.  He was sentenced as a Range II, Multiple Offender to fifteen years in incarceration for the aggravated robbery conviction and thirty-five years as a Violent Offender for the especially aggravated kidnapping conviction.  The sentences were ordered to be served concurrently, for a total effective sentence of thirty-five years at 100 percent.  After the denial of a motion for new trial, Appellant initiated this appeal.  The following issues are presented for our review: (1) whether Appellant is entitled to relief from his kidnapping conviction as a result of the holding in *State v. White*, 362 S.W.3d 559 (Tenn. 2012); (2) whether the trial court violated Appellant's right to confront witnesses by admitting preliminary hearing testimony of the victim at trial after it was determined the victim was incompetent to testify at trial; (3) whether the trial court improperly admitted excited utterances of the victim; (4) whether the trial court erred in admitting expert witness testimony about the victim's mental state; (5) whether the evidence was sufficient to support the convictions; (6) whether the trial court improperly sentenced Appellant; and (7) whether cumulative error affected Appellant's constitutional due process rights.  After a review of the evidence and applicable authorities, we determine: (1) the trial court properly determined that the victim was unavailable at trial such that the State could utilize her preliminary hearing testimony; (2) the trial court properly admitted excited utterances of the victim; (3) Appellant waived any issue with regard to hearsay admitted during the testimony of Jarian Henry based on the failure to object to the evidence; (5) Appellant is entitled to relief from his aggravated kidnapping conviction based on *White* because the issue has been fairly raised and we conclude that the error was not harmless beyond a reasonable doubt; (6) the evidence was sufficient to support the conviction for aggravated robbery; and (7) the trial court properly sentenced Appellant.  Accordingly, Appellant's aggravated robbery conviction is affirmed, but a new trial is required on the especially aggravated kidnapping conviction.  Therefore, this case is remanded for further proceedings as set out in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed in Part, Reversed in Part and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and D. KELLY THOMAS, JR., JJ., joined.

Phyllis Aluko, Assistant Public Defender, Memphis, Tennessee, for appellant, Andre Benson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On January 9, 2008, Beatrice Dickerson, the victim, was robbed at her home. The perpetrator tied up the victim before he fled from the scene. The victim identified Appellant as the perpetrator. On June 9, 2009, the victim testified at the preliminary hearing. As a result of the evidence presented at the preliminary hearing, Appellant was indicted for aggravated robbery and especially aggravated kidnapping.

After the indictment but prior to trial, the State revealed that the victim was suffering from Alzheimer's disease. The trial court held a competency hearing to determine whether the victim would be available to testify at trial. At the hearing, Dr. Robert Burns, a doctor specializing in geriatric medicine, testified that he examined the victim about nine months after the crime, in September of 2008. At that time, the victim was diagnosed with Alzheimer's disease. She scored a ten out of thirty points on a mental exam. Dr. Burns explained that this was a "pretty low" score but that the victim was still able to care for herself. At the time, the victim was still driving herself to work and lived alone. She was eighty years of age. Dr. Burns stated that it was possible the victim was suffering from Alzheimer's at the time of the incident. In May and August of 2009, Dr. Burns saw the victim as a patient. At that time, the victim had retired from her job. She continued to live by herself but needed help with cooking and driving.

Dr. Burns reviewed the victim's statement to police and testimony at the preliminary hearing. He testified that both were consistent with the victim's recollection of the events. In Dr. Burns's opinion, the victim was competent to testify at the preliminary hearing based

on the fact that a variety of people were asking her questions in different ways and "she kept on answering the questions correctly."

Dr. Burns explained that Alzheimer's disease involves short term memory loss. However, a person with the disease is capable of distinguishing every day ordinary events from traumatic events. Dr. Burns noted that the victim's responses to questions about the crime were precise.

Dr. Burns opined that, at the time of the hearing, the victim was no longer competent to testify at trial. He had last examined the victim in October of 2010. By this time, the victim no longer lived by herself or took care of herself. Dr. Burns opined that the victim would be confused by questions demanding a certain degree of specificity. Dr. Burns explained that the victim had experienced a decline in executive function.

At the conclusion of the hearing, the trial court determined that the victim was "unavailable" to testify at trial based on her condition. The trial court then ruled that the testimony given by the victim at the preliminary hearing was reliable "based on the testimony of Dr. Burns" because she was "capable and able to render the testimony in a means and a manner that would make it reliable under the law." Further, the trial court commented that the witness was subject to cross-examination at the preliminary hearing. Counsel for Appellant stated that the testimony was prejudicial. The trial court noted the exception but ruled that the transcript of the testimony was admissible at trial in lieu of the testimony of the victim.

At trial, Dr. Burns testified. He explained to the jury that the victim had suffered from Alzheimer's disease since September of 2008. At the time of the diagnosis, the victim had trouble with complex tasks but was able to perform simple tasks such as bathing and dressing herself with no difficulty. At that time, the victim could still travel and recognize her friends and family. At the time of the preliminary hearing, the victim was examined by Dr. Burns. He indicated that the victim was still able to testify, understand the significance of the hearing, and the oath to tell the truth. However, at the time of the trial, Dr. Burns testified that the victim had suffered significant memory losses and needs help with daily chores.

Muriel Malone, the prosecutor who handled the preliminary hearing, testified that the victim identified Appellant at the preliminary hearing as the person who robbed and kidnapped her in January of 2008. Ms. Malone authenticated the audiotape of the preliminary hearing. The tape was played for the jury.

The victim testified that she answered her door on January 9, 2008. At the door was the young man who "raked . . . leaves in [her] yard every week." The victim identified Appellant as the young man. The victim:

> [N]aturally opened the door [being familiar with Appellant] and he had a knife in his hand and he told me, um, "I want some money." I said, "well, I don't have any." And he said, "yes you have." So he kinda - he didn't force his way in, but he - knowing him, I just stepped back and - let him come on in, you know.

The victim stated that Appellant never tried to cut her with the knife. She explained that she told Appellant she had a grandson that lived with her at the time. She told Appellant to "be quiet" because her grandson was asleep. The victim thought that Appellant believed her statement although the grandson was not home at the time. Appellant then "pushed" the victim into the bedroom and put the victim's pocketbook on the bed. Appellant opened it and saw a twenty dollar bill. Then:

> [T]he phone rang. You know, it was a cousin of mine. Everything she was asking me, I wasn't making sense for the answer and so she came over and she just got there right as he left, but anyway, he said, "You're gonna have to get off that phone." But the way I was talking to her didn't make sense to her, so she came over, but he tied me, he uh, had a cord, he tied my legs he told me to put my legs together. He tied my hands behind me, but in the meantime, this cord broke. So he went in my living room and cut my lamp cord and tied my feet . . . and uh, just as he uh, got through tying my feet, my phone rang and I was talking to this cousin and wasn't making sense to her but anyway. He said, "You're gonna have to get off that phone." So I said, "Ok." So, I got off the phone, but by the bedroom being door . . . being closed, he didn't know there wasn't anybody there. So then on the way out, he put his hand on my head, and push me, just pushed me, he didn't knock me, he just pushed me down to the floor.

Appellant took the twenty dollars from the victim's pocketbook. Shortly after Appellant left the house, the victim's cousin, Linda Henry, showed up at the house. The police arrived after Ms. Henry came to the house to check on the victim.

Ms. Henry testified at trial that she was leaving church at around ten o'clock p.m. on the night of the incident with her children. She called the victim to talk about the church service. When the victim answered the phone, Ms. Henry described the victim's answers to questions as strange, asking if she was "on the way" or "bringing the kids." Ms. Henry

thought that the victim was "playing" but drove over to her house to check on her to be on the safe side. When Ms. Henry and her children arrived, the door was cracked open. Ms. Henry's older sons ran into the house while Ms. Henry called 911. The victim was "nervous," "scared," and "shaking." The victim stated that, without question, the perpetrator was the person that cut her yard.

Ms. Henry described the victim's general demeanor at the time of the accident as "hyper" for her age. Since that time, the victim had gotten "quiet" and her memory was poor.

Ms. Henry's son, Jarian, testified that he was one of the first people to enter the victim's home on the night of the incident. When he arrived, he saw the victim on the hallway floor with her hands tied behind her back with a lamp cord. The victim was shaking and told him that the "gardener man" came in her house with a knife, tied her up and took some of her money.

Officer Nicholas Dandridge responded to the 911 call. When he arrived, the victim described the perpetrator as a black male between the ages of forty and forty-five, weighing about 170 to 180 pounds, wearing dark clothing. The victim stated that the perpetrator had a bald head. Officer Dandridge described the victim as "calm" but "still upset" about the incident. The lamp cord and a napkin or handkerchief were recovered from the home. These items were used to restrain the victim during the incident. The victim "knew exactly who she said she saw and she was confident about it."

Sergeant Christopher Kee interviewed the victim on two separate occasions. The victim's description of the event remained the same each time.

Andre Manning, the victim's neighbor, recalled that Appellant came to his home seeking yard work about six weeks prior to the incident. He testified that he saw Appellant and another man working in the victim's yard. The second man looked nothing like Appellant. Mr. Manning identified Appellant from a photo line-up.

Appellant's brother, Otis Benson, testified on his behalf. He claimed that Appellant lived with him until December of 2007 when he left to go live with his girlfriend in Montana. Later in his testimony at trial, Mr. Benson stated that Appellant did not go to Montana until after the police visited Mr. Benson's home looking for Appellant. Mr. Benson admitted that Appellant had sometimes worked with him doing yard work.

The State called investigator Thomas Shouse in rebuttal. Mr. Shouse recalled a conversation with Mr. Benson in which he stated that Appellant lived with him until January of 2008.

At the conclusion of the proof, Appellant was convicted of aggravated robbery and especially aggravated kidnapping. After trial, the trial court held a separate sentencing hearing. At the hearing, Appellant was sentenced as a Range II, Multiple Offender to fifteen years for aggravated robbery. The trial court determined that Appellant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range and the victim of the offense was particularly vulnerable due to age. *See* T.C.A. § 40-35-114(1) & (4). In mitigation, the trial court considered the fact that Appellant advised the court that he was HIV positive. The sentence for aggravated robbery was ordered to be served concurrently with the sentence for especially aggravated kidnapping. On the kidnapping charge, Appellant was sentenced as a Violent Offender to thirty-five years at 100 percent. The trial court applied the same two enhancement factors and the same mitigating factor.

Appellant promptly filed a motion for new trial on October 14, 2011. In the motion, Appellant argued the following: (1) the trial court improperly denied the motion for judgment of acquittal; (2) the State failed to prove that Appellant committed the crimes; (3) the trial court erred in its role as thirteenth juror; (4) the trial court erred in declaring the victim unavailable which violated Appellant's due process rights; (5) the trial court erred by allowing the State to introduce a picture of Appellant in jail clothing; (6) the trial court erred in allowing excited utterances of the victim to be admitted during the testimony of Ms. Henry and her son Jarian; and (7) the trial court imposed an excessive sentence. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant raises the following issues: (1) whether the trial court improperly instructed the jury on especially aggravated kidnapping; (2) whether the trial court improperly denied Appellant the right to confront witnesses by ruling the victim was unavailable to testify at trial; (3) whether the trial court improperly permitted the introduction of statements made by the victim; (4) whether the trial court improperly allowed Dr. Burns to testify as to his opinion without ruling him an expert or giving a limiting instruction to the jury; (5) whether the evidence was sufficient to support the convictions; (6) whether the trial court imposed excessive sentences; and (7) whether cumulative error requires a reversal of Appellant's convictions.

*Analysis*

*Unavailability of the Victim*

Appellant complains on appeal that the trial court improperly ruled that the victim was unavailable for trial based solely on the testimony of Dr. Burns, and this improper determination led to the admission of hearsay evidence at trial. As a result, Appellant claims his constitutional right to confront the witness was violated because he was stripped of the ability to cross-examine the witness. Appellant insists that this Court can reach the issue via plenary or plain error analysis. The State disagrees, arguing that Appellant waived this issue by agreeing at the beginning of the competency hearing to rely on Dr. Burns's testimony and failing to object to the introduction of the testimony on the basis of a violation of the confrontation clause. In the alternative, the State argues that the trial court properly determined that the witness was unavailable and plain error does not provide Appellant relief.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule of inadmissibility of hearsay.

The Confrontation Clause of the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution prohibits the admission of testimonial hearsay unless the witness "was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 54 (2004); *see* U.S. Const. amend. VI; Tenn. Const. art. I, § 9. The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006); *State v. Franklin*, 308 S.W.3d 799, 810 (Tenn. 2010).

A testimonial statement "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford*, 541 U.S. at 51 (quoting 2 N. Webster, *An American Dictionary of the English Language* (1828)). Testimonial statements include "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* at 52 (quoting Brief for National Association of Criminal Defense Lawyers, et. al. as *Amicus Curie* 3).

The testimony given at the preliminary hearing by the victim was clearly testimonial. Thus, we must determine if the witness was unavailable to testify in order to determine if the testimony is admissible. As applicable to the case herein, unavailability of a witness is defined in Tennessee Rule of Evidence 804. It includes instances in which the declarant:

> (1) is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) demonstrates a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity;

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process; or

. . . .

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

Tenn. R. Evid. 804(a).

Rule 804(b)(3) of the Tennessee Rules of Evidence states:

(b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination.

To begin our analysis, we must first review the trial court's admission of the hearsay evidence with the de novo standard of review. Prior to trial, the State sought to introduce the victim's preliminary hearing testimony on the basis that the victim's Alzheimer's disease had progressed to such a degree that she would be unavailable to testify at trial. The State produced her doctor, Dr. Burns, to testify at the hearing regarding the condition of the victim's mental state. Counsel for Appellant agreed to the admission of the doctor's testimony. At the end of the hearing, after the trial court found the victim unavailable, counsel for Appellant raised a "complaint" that the admission of the preliminary hearing

testimony would favor the State due to the limited purpose of the preliminary hearing testimony. Counsel for Appellant complained that he would be unable to question the victim about her statement.[1]

We agree with the parties that the preliminary hearing testimony is hearsay. It is an out-of-court statement made by someone other than the declarant that is offered for the truth of the matter asserted. As stated above, the testimony or statement is clearly testimonial in nature. Additionally, we agree with the trial court that, based on the testimony of Dr. Burns, the witness was unavailable at the time of trial due to her diagnosis of Alzheimer's disease. Moreover, Appellant had an opportunity to cross-examine the victim at the preliminary hearing. As a result, Appellant is not entitled to relief. This issue is without merit.

*Admission of Excited Utterances of the Victim*

In a related evidentiary issue, Appellant complains that the trial court improperly admitted several statements of the victim as excited utterances. In particular, Appellant complains of statements introduced during the testimony of Ms. Henry and her son Jarian involving the victim's description and identification of the robber. The State disagrees, pointing out that Appellant failed to object to the testimony of Ms. Henry, so the issue is waived. In the alternative, the State argues that any error in admitting the testimony of Mr. Henry was harmless because the jury had already heard the same proof without objection.

One of the long-recognized exceptions to the hearsay rule is the excited utterance exception found at Rule 803(2) of the Tennessee Rules of Evidence. This exception applies to statements, "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). In *State v. Land*, 34 S.W.3d 516 (Tenn. Crim. App. 2000), this Court stated that "[t]he underlying theory of this exception is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." 34 S.W.3d at 528. For a statement to fall within this exception, three criteria must be met: "(1) there must be a startling event or condition that causes the stress of excitement; (2) the statement must relate to the startling event or condition; and (3) the statement must be made while the declarant was under the stress of excitement." *Id.* at 528-

---

[1] The State suggests that counsel waived this issue entirely based upon an acquiescence to the admission of the doctor's testimony and the failure to specifically object on the basis of the Confrontation Clause. We disagree. While counsel for Appellant did not specifically "object" to the admission of Dr. Burns's testimony, counsel complained after the trial court's ruling that Appellant's "rights [were violated], [under the] confrontation clause to be able to confront the person accusing him."

29 (citing Neil P. Cohen, et. al., *Tennessee Law of Evidence* § 803(2).2 at 533-34 (3d ed. 1995)).

In the case herein, Ms. Henry testified that when she arrived at the victim's home on the night of the incident the victim was "nervous," "scared," "shaking," and appeared upset. Ms. Henry described that as the victim was "shaking and upset" she said that "the guy that cut her yard" was the one that "had come in and robbed her." Appellant did not object to the introduction of this testimony as hearsay. Mr. Henry testified that when he arrived at the victim's home with his mother the victim appeared "startled" and was "shaking." Then, Ms. Henry was able to "calm[] her down" before Mr. Henry heard the victim say that it "was the gardener man. The man who does her yard." At that point, counsel for Appellant objected to the introduction of the testimony from Mr. Henry. The trial court overruled the objection, determining that the victim's statements qualified as excited utterances.

Typically, a defendant's failure to make a contemporaneous objection during trial constitutes a waiver of an issue. Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a) (stating that "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn. 1989). After a review of the record, we agree with the State. Appellant made no objection to the introduction of the testimony given by Ms. Henry at issue herein. Therefore, he cannot successfully raise this issue on appeal.

As to the statements of the victim entered into evidence during the testimony of Mr. Henry, we determine that the victim's statements meet the criteria for the excited utterance exception. The victim had recently been rescued after being robbed and tied up in her own home by Appellant. She was 80 years of age at the time and was visibly shaking and afraid. Clearly, this constitutes a startling event or condition that would cause the stress of excitement. The victim's statement that her gardener was responsible for the crime was clearly made while she was still under the influence of the event because she was visibly shaking. Therefore, the trial court properly allowed the statement in under the excited utterance exception.[2] Additionally, because we determine that the statements at issue qualify for the excited utterance exception to the general rule prohibiting hearsay we conclude Appellant's confrontation rights under the Sixth Amendment, as well as, article I, section 9 of the Tennessee Constitution were not violated by the admission of the nontestimonial excited utterance of the victim. Appellant is not entitled to relief on this issue.

---

[2]As noted by the State, due to Appellant's failure to object to the testimony introduced during Ms. Henry's direct examination, any error in admitting Mr. Henry's testimony would be rendered harmless as the jury had already heard the same proof without objection.

*Admissibility of Testimony of Dr. Burns*

Next, Appellant complains that the trial court erred by not qualifying Dr. Burns as an expert at either the hearing prior to trial or at trial. The State insists that Appellant waived this issue for failing to object and failing to raise the issue in a motion for new trial.

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases . . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Enid. 403; *see also Banks*, 564 S.W.2d at 951.

At the beginning of the pretrial hearing regarding the availability of the victim, both parties agreed that the testimony of Dr. Burns was critical to the determination of the issue. The trial court did not certify Dr. Burns as an expert at this hearing or at trial. Appellant failed to object to the introduction of the testimony of Dr. Burns at this hearing or at trial. As stated above, a defendant's failure to make a contemporaneous objection during trial constitutes a waiver of an issue. Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a) (stating that "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn. 1989). After a review of the record, we conclude Appellant waived this issue. Appellant made no objection to the introduction of the testimony given by Dr. Burns at issue herein and did not contest the doctor's credentials. Therefore, he cannot successfully raise this issue on appeal. This issue is waived.

*Application of State v. White Decision*

Next, Appellant contends that the trial court failed to properly instruct the jury on especially aggravated kidnapping thereby violating his due process rights. Appellant cites *State v. White*, 362 S.W.3d 559 (Tenn. 2012), to support his argument. The State, noting that *White* was decided about a year after Appellant's trial, argues that regardless of the application of *White*, the proof was unequivocal that the robbery was completed prior to the

especially aggravated kidnapping. In other words, that Appellant would not be entitled to relief from his conviction even if the jury had been instructed differently.

The defendant cites *White* to argue that his especially aggravated kidnapping conviction violates his due process rights because the evidence is subject to different interpretations with respect to whether his removal or confinement of the victim exceeded that necessary to accomplish the accompanying felony of aggravated robbery.

In *White*, the Tennessee Supreme Court overruled "[*State v.*] *Anthony* [, 817 S.W.2d 299 (Tenn. 1991)] and the entire line of cases including a separate due process analysis in appellate review" of kidnapping convictions that are accompanied by a separate felony. 362 S.W.3d at 578. The court included a comprehensive review of Tennessee's kidnapping statutes and concluded that our legislature did not intend for the kidnapping statutes to apply to instances in which the removal or confinement of a victim is essentially incidental to an accompanying felony, such as rape or robbery, and that the inquiry "is a question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard." *Id.* at 562. The court elaborated as to what constitutes appropriate instructions to the jury:

> Under the standard we adopt today, trial courts have the obligation to provide clear guidance to the jury with regard to statutory language. Specifically, trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery. When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

*Id.* at 578. The court made sure to emphasize that it was not creating a new standard for kidnapping but instead was "merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty[,]" and that its ruling in the case did not, thus, "articulate a new rule of constitutional law or require retroactive application." *Id.*

The facts at issue in *White* revealed that the defendant hid inside a restaurant at closing, approached a store manager from behind as she was in the women's restroom, knocked her to her knees, removed a set of keys from her arm, and ordered her to remain in the restroom. *Id.* at 562. The defendant then returned to the restroom and forced the manager at gunpoint to accompany him to the employee area where another restaurant employee was attempting to open the store safe. *Id.* After the manager opened the safe, the defendant took a computer monitor, cell phones, and cash, "removed all of the telephones and directed the two women to lie down on the floor and wait eight or nine minutes." *Id.* at 562-63.

When reviewing the evidence, the supreme court concluded that the proof in *White* could be interpreted in different ways and that the issue of whether the removal or confinement of the victim constituted a substantial interference with her liberty was a question of fact for the jury to resolve. *Id.* at 579. In *White,* the jury had been given only the pattern jury instructions on the elements of the offenses, which did not include an instruction that substantial interference with the victim's liberty requires a finding that the victim's removal or confinement was not essentially incidental to the accompanying felony. Therefore, the court concluded that the defendant was entitled to a new trial on the especially aggravated kidnapping charge. *Id.* at 580.

To provide guidance in future cases, the court set forth the following instruction to be issued by trial courts until an appropriate pattern jury instruction is developed:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;

• whether the removal or confinement occurred during the commission of the separate offense;

• whether the interference with the victim's liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id.* at 580-81.

We must now determine if *White* is applicable herein. While the *White* decision specifically stated that it was not creating a new rule of law subject to retroactive application, since the issuance of *White*, the supreme court has remanded several cases issued by this Court that were in the appellate pipeline at the time that *White* was released. *See e.g., State v. Robert Fusco*, No. M2012-01068-CCA-RM-CD, 2012 WL 6062856, at *1 (Tenn. Crim. App., at Nashville, Dec. 6, 2012). Thus, it appears that the use of the word "retroactive" appears to have been utilized by the court to prevent *White* from being used in collateral attacks on convictions. *See* 362 S.W.3d at 578. Furthermore, this Court has applied *White* to cases in the appellate pipeline on direct appeal that are not on remand from the Tennessee Supreme Court. *See State v. Robert Jason Burdick*, No. M2012-01071-CCA-R3-CD, 2013 WL 2642313, at *12 (Tenn. Crim. App., at Nashville, Jun. 11, 2013); *State v. James L. Dowell, III*, No. M2012-00520-CCA-R3-CD (Tenn. Crim. App., at Nashville, Apr. 30, 2013); *State v. Theotus Barnett*, No. W2012-00048-CCA-R3-CD, 2013 WL 2297128, at *10 (Tenn. Crim. App., at Jackson, May, 22, 2013). As this case was in the appellate pipeline at the time of the appeal, we must apply *White*.

The jury instructions in the case at hand were given during the trial that took place in August of 2011. Obviously, the instructions given were not those envisioned by the supreme court in *White*. The aggravated kidnapping instructions given herein were the following pattern jury instructions in effect at the time of trial:

Any person who commits an especially aggravated kidnapping is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

> (1) that the defendant knowingly removed or confined another unlawfully so as to interfere substantially with the other's liberty;
>
> > and
>
> (2)(a) that the confinement or removal was accomplished with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it was a deadly weapon.

These instructions are almost identical to the instructions decried by our supreme court in *White*. Therefore, the error in the jury instructions that was present in *White* is present in this case. See *Robert Jason Burdick*, 2013 WL 2642313, at *12; *Theotus Barnett*, 2013 WL 2297128, at *10; *State v. Christopher Bryan Hancock*, No. E2011-00111-CCA-R3-CD, 2012 WL 4340693, at *8 (Tenn. Crim. App., at Knoxville, Sept. 24, 2012).

Because such an error in an instruction-related error, we must now determine whether or not the error was constitutional harmless error. *White*, 362 S.W.3d at 580, n.20; *Theotus Barnett*, 2013 WL 2297128, at *10. In *White*, our supreme court determined that the error was not harmless and a remand was required "[b]ecause [the court could not] conclude beyond a reasonable doubt that the jury verdict would have been the same absent the instructional error." *White*, 362 S.W.3d at 580, n.20.

The evidence presented at trial showed that Appellant came into the eighty-year-old victim's house. He demanded money. The victim stated that she did not have any. Appellant pushed her into her bedroom and placed her pocketbook on the bed. Appellant opened her pocketbook and saw a twenty dollar bill inside. Appellant had brought a cord with him. He tied the victim's hands together behind her back. When he attempted to tie her feet together, the cord broke. Appellant cut a lamp cord and used it to tie the victim's feet together. At that point, the phone rang and the victim talked to her cousin on the phone. As Appellant was leaving the room, he pushed the victim to the floor. Then Appellant took the twenty dollar bill out of the victim's pocketbook and left the house.

In the case at hand, we conclude that the error was not harmless. Appellant's tying the victim's hands and feet after seeing the money, but before actually taking the money is subject to interpretation regarding whether it was a substantial interfence with the victim's liberty and essentially incidental to the aggravated robbery. As in *White*, "this proof could be interpreted in different ways and, therefore, the determination of whether the [ ] confinement of [the victim] constituted a substantial interference with her liberty was a question of fact for the jury to resolve." *Id.* at 579.

Therefore, Appellant is entitled to a new trial with regard to the especially aggravated kidnapping conviction with appropriate jury instructions as set out in *White*.

*Sufficiency of the Evidence*

Appellant insists that the evidence was insufficient to support the convictions. Specifically, he points to insufficient proof that he was the perpetrator and that he employed a weapon. The State, on the other hand, argues that the evidence was sufficient.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id*.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence. *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given

to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 599, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

Appellant raises this issue in regard to his convictions for both especially aggravated kidnapping and aggravated robbery. In light of our above conclusion, this section applies only to Appellant's conviction for aggravated robbery. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a).

Appellant argues that there was insufficient proof as to his identity. To support his argument, Appellant points to the inadmissibility of the victim's preliminary hearing testimony and the error made by the trial court in admitting this testimony. As discussed above, we determined that the trial court properly determined that the victim was unavailable prior to the introduction of the testimony. During the testimony, the victim clearly stated that the person who cut her yard was responsible for the robbery and kidnapping. Appellant was identified as this person by the victim's neighbor. Further, Appellant's own brother testified that he did yard work at the victim's home. Appellant's argument with regard to identity is nothing more than a challenge to the credibility of the witnesses. These are issues reserved for resolution by the trier of fact and not the appellate courts. *Pruett*, 788 S.W.2d at 561.

Appellant also insists that the proof did not support the finding that he employed a knife during the incident. To the contrary, the victim testified that Appellant was holding a knife and described it as "larger than a regular twelve inch ruler." Again, the jury is responsible for assessing the credibility of the witnesses. *Id.* The evidence is sufficient to support the convictions. Appellant is not entitled to relief.

*Sentencing*

-17-

Lastly, Appellant argues that the trial court imposed an excessive sentence. Specifically, he complains that the trial court erred in applying at least one enhancement factor, that the victim was particularly vulnerable due to age, and that the trial court failed to properly consider all mitigating factors. The State disagrees, urging this Court to affirm Appellant's sentences.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 706.

As to the length of Appellant's sentences, after a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. The trial court declined to apply any statutory mitigating factors but recognized and "consider[ed] the information that's been provided to the court at the bench." The trial court also applied several enhancement factors:

-18-

that Appellant had "prior criminal convictions in addition to those necessary to establish the appropriate range"; and that the victim was "particularly vulnerable due to age." T.C.A. § 40-35-114(1), (4). After application of the mitigating and enhancement factors, the trial court sentenced Appellant as a Range II, Multiple Offender to fifteen years in incarceration for the aggravated robbery conviction and thirty-five years as a Violent Offender for the especially aggravated kidnapping conviction. The sentences were ordered to be served concurrently, for a total effective sentence of thirty-five years at 100 percent. The trial court placed the reasons for imposing the specific sentence on the record. Further, Appellant's sentence is in the range of punishment provided for his offenses, and the sentence appears to be consistent with applicable sentencing principles and guidelines. Appellant argues that the trial court was required to provide mitigation based on the fact that he voluntarily released the victim alive. To the contrary, the proof shows that Appellant tied the victim up at the scene and fled. There was no voluntary release. Further, Appellant did not raise this mitigation factor with the trial court. Moreover, even if the trial court erred in applying one or more enhancement or mitigating factor, as long as the trial court's sentence adheres to the relevant principles of sentencing, the sentence will be upheld. The record reflects that the trial court followed sentencing principles. Accordingly, this Court must affirm the sentence. Appellant is not entitled to relief.

*Conclusion*

For the foregoing reasons, Appellant's conviction for aggravated robbery is affirmed. However, the conviction for especially aggravated kidnapping must be reversed and a new trial held in accordance with this opinion.

_____
JERRY L. SMITH, JUDGE