# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 9, 2014

## STATE OF TENNESSEE v. KEVIN HARDING

**Appeal from the Circuit Court for Giles County**
**No. 15653     Stella L. Hargrove, Judge**

---

**No. M2013-01637-CCA-R3-CD - Filed June 10, 2014**

---

The defendant, Kevin Harding, was convicted of one count of facilitation of possession of marijuana, a Schedule VI drug, with the intent to sell, a Class A misdemeanor, one count of possession of cocaine with intent to sell, a Class B felony, one count of possession of drug paraphernalia, a Class A misdemeanor, and one count of possession of a firearm during the commission of a dangerous felony, a Class D felony. The trial court sentenced the defendant to a four-year sentence for facilitation of possession of marijuana with the intent to sell, a seventeen-year sentence for possession of cocaine for resale, a sentence of 11 months and 29 days for possession of drug paraphernalia, and an eight-year sentence for possession of a firearm during the commission of a dangerous felony. The court ordered the possession of cocaine for resale and possession of drug paraphernalia sentences to be served concurrently, and the sentence for possession of a firearm during the commission of a dangerous felony to run consecutively to the sentence for possession of cocaine for resale, for an effective sentence of twenty-five years. On appeal, the defendant argues that the trial court erred when it failed to define the charge of simple possession of cocaine for the jury; that the trial court committed plain error in sentencing the defendant to serve four years for facilitation of possession of marijuana with the intent to sell; and that the trial court committed plain error in failing to require the State to elect the felony to serve as the underlying felony for possession of a firearm and failing to define "dangerous felony" for the jury. After reviewing the record, we affirm the judgment of the trial court for possession with the intent to sell cocaine, reverse the judgment for facilitation because the sentence was outside the appropriate class range, and reverse the judgment for possession of a firearm during the commission of a dangerous felony. The case is remanded for resentencing on the facilitation conviction and for a new trial on the possession of a firearm charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in**

**Part, Reversed in Part, and Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Kevin Harding.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Mike Bottoms, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 19, 2011, the defendant and William "Travis" McMahan were arrested at the Star Motel in Pulaski, Tennessee. Mr. McMahan met the defendant in Athens, Alabama in either 2010 or 2011 and knew the defendant as his "drug dealer." The defendant asked if he could follow Mr. McMahan to Pulaski because the defendant did not know where Pulaski was. The defendant was meeting someone in Pulaski and planned to stay at the Star Motel. Mr. McMahan agreed, and the defendant followed Mr. McMahan from Athens, Alabama, to Pulaski on August 18, 2011. Mr. McMahan drove a "screaming yellow" Mustang, and the defendant drove a white car.

The two reached Pulaski around 11:00 or 11:30 a.m. and stopped at a work site, where the defendant picked up a man known as "Al," and Mr. McMahan followed the two of them to the Star Motel. Mr. McMahan agreed to rent a room at the motel in his name because the defendant did not have a driver's license, and the defendant offered to pay Mr. McMahan cash for the room. The defendant carried several suitcases and Walmart bags into the room, and Mr. McMahan assumed that there was only food in the Walmart bags. Once the men entered the room, the defendant gave Mr. McMahan some crack cocaine to smoke in exchange for leading the defendant to Pulaski and reserving the room in his name.

Al left the motel only a few minutes after arriving and returned to his work site in the defendant's white car. Al returned to the motel several times that afternoon, and the defendant gave Al crack cocaine to sell to his co-workers. Other individuals came to the motel room that evening, and the defendant sold one of them a small bag of marijuana.

The next morning, Mr. McMahan and the defendant moved from Room 9 of the motel to Room 11. The two drove around Pulaski that afternoon and returned to the motel around 4:30 p.m. Al arrived a short time later and was with a young woman, Christina Burns.

2

Ms. Burns received a ride home from "Brian," the individual that the defendant and Mr. McMahan knew as "Al." Brian was driving a white car, and they stopped at the Star Motel so that Brian could meet a friend. Ms. Burns testified that she did not know the defendant and that when she arrived, the defendant asked her, "Why hadn't you been selling drugs?" Ms. Burns witnessed Brian purchase crack cocaine from the defendant, and Ms. Burns and Brian left the motel after about twenty minutes.

After leaving the motel, Ms. Burns called Tammy Gatlin, a probation and parole officer, and told Ms. Gatlin that she was "a little frightened" because she had just met a man who wanted her to sell drugs. Ms. Gatlin then telephoned Deputy Scott Nations and informed him that there were drugs in one of the rooms of the Star Motel.

Deputy Nations responded to the call, and when he arrived at the motel, he saw Mr. McMahan and Chance Wilson standing outside of a motel room. Mr. Wilson placed one hand behind his back in an attempt to hide a beer when Deputy Nations arrived, and Deputy Nations exited his vehicle, placed his hand on his weapon, and told the men to show him their hands. Mr. McMahan gave Deputy Nations permission to pat him down, and when Deputy Nations asked if there was anyone in Mr. McMahan's room, Mr. McMahan responded that there was not. Deputy Nations asked permission to search the room, and Mr. McMahan agreed. Mr. McMahan went to open the door and, right before opening it, told Deputy Nations that someone else was in the room. After Mr. McMahan opened the door, he stepped back and waited outside of the room.

When Deputy Nations entered the room, accompanied by Deputy Michael Thomason, he saw a round table that contained digital scales and a white cardboard box with marijuana on it. The defendant was in the room and responded, "Yeah," when asked if the marijuana was for personal use, although Deputy Nations was unsure whether the defendant meant his reply in jest. Deputy Nations proceeded to pat down the defendant and discovered a clear sandwich "baggie" that contained cocaine in the defendant's left pocket. Deputy Nations also found $640 in one of the defendant's other pockets. Deputy Nations arrested the defendant and, assisted by Deputy Michael Thomason, arrested Mr. McMahan and brought him back into the hotel room, where both men were read their *Miranda* rights. Deputy Nations searched Mr. McMahan again and discovered a crack pipe in the pocket of Mr. McMahan's shorts. Deputy Thomason asked where the rest of the marijuana was, and the defendant responded that it was behind a dresser. Deputy Thomason then recovered one large plastic bag that contained sixty-eight individual bags of marijuana. After searching the room, Deputy Nations discovered a .357 pistol in a Walmart bag on top of the refrigerator. Deputy Thomason packaged the drugs collected in the motel room and sent it to be analyzed at the Tennessee Bureau of Investigation ("TBI") laboratory.

3

After the defendant and Mr. McMahan were arrested and taken to jail, Deputy Nations asked the defendant about his role in the incident that led to his arrest. The defendant told Deputy Nations that he was homeless and "just passing through, to go ahead and ask the other guy. [Mr. McMahan] would be able to explain it all to [Deputy Nations]." Whenever Deputy Nations asked the defendant about the cocaine found in his pocket and the gun in the Walmart bag, the defendant told Deputy Nations to "ask the other guy . . . . The other guy will be able to clear it all up." The defendant told Deputy Nations that he was holding onto the $640 for Mr. McMahan.

When Deputy Nations interviewed Mr. McMahan, Mr. McMahan stated that the drugs and gun belonged to the defendant. Mr. McMahan testified that he did not realize there was a gun in the motel room at the time of his arrest. Mr. McMahan admitted that ammunition for a .44 magnum gun found in his car belonged to him, and he stated that he received the gun from his father. Mr. McMahan testified that he entered a guilty plea to the charges of possession of marijuana for sale, a best interest plea to the charge of possession of cocaine for sale, and a guilty plea to the charge of possession of drug paraphernalia. He agreed that one of the conditions of his guilty pleas was that he testify truthfully at the defendant's trial.

Glen Jay Glenn, a Special Agent Forensic Scientist at the TBI crime lab, analyzed the evidence that Deputy Thomason sent to the lab. Agent Glenn analyzed twenty of the sixty-eight bags and concluded that each of the twenty bags contained marijuana. The combined weight of the analyzed bags was 18.18 grams and the combined weight of the un-analyzed forty-eight bags was 47.39 grams, for a total weight of 65.57 grams of marijuana. Agent Glenn next analyzed two of the eleven bags that contained a rock-like substance and found that each bag contained cocaine base. The combined weight of the two bags was 1.59 grams, and the weight of the other nine bags was 6.8 grams, for a combined weight of 8.39 grams. Agent Glenn then analyzed two plastic bag corners that contained a white substance that Agent Glenn determined was cocaine. The two bags had a combined weight of 1.35 grams. Agent Glenn last analyzed the substance found on the white tray and determined that it was marijuana and weighed .8 grams.

The jury found the defendant guilty of the lesser included offense of facilitation of possession of marijuana with the intent to sell as to Count 1, guilty of possession of cocaine for resale as to Count 2, guilty of possession of drug paraphernalia as to Count 3, and guilty of the possession of a firearm during the commission of a dangerous felony as to Count 4. The defendant filed a motion for a new trial, which the trial court denied. He then filed this timely appeal, and we now proceed to consider his claims.

**ANALYSIS**

4

## A. Jury Instructions

The defendant argues that the trial court committed error in regards to the jury instruction on possession of cocaine. Specifically, he contends that the trial court failed to instruct the jury as to the essential elements for simple possession of cocaine.

In a jury trial, the defendant "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). It is the duty of the trial court "to give a complete charge of the law applicable to the facts of the case[.]" *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975). In evaluating a claim of error in a jury instruction, this court "must review the charge in its entirety and read it as a whole." *State v. Leach*, 148 S.W.3d 42, 58 (Tenn. 2004). A trial court is not required to rely only on pattern jury instructions. *State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). "A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998). Issues regarding jury instructions present mixed questions of law and fact that this court reviews de novo with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001)).

The trial court instructed the jury that Count 1 of the indictment pertained to marijuana and that Count 2 pertained to cocaine. The trial court stated that the term "knowingly" meant:

> that a person acts knowingly, with respect to conduct or to circumstances surrounding the conduct, when the person is aware of the nature of the conduct or that the circumstance[s] exist. A person acts knowingly, with respect to a result of the person's conduct, when the person is aware that the conduct is reasonably certain to cause the result. The requirement of knowingly is, also, established if it is shown that the Defendant acted intentionally.

The trial court instructed the jury that possession could be either actual or constructive and defined actual possession as "direct, physical control over an object at a given time." The court stated that "[a] person who, although not in actual possession, knowingly has both the power and the intention at any given time to exercise dominion and control over that object is in constructive possession of it." The trial court also provided the following instructions for simple possession of marijuana:

> For you to find the Defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

5

1. That the Defendant knowingly possessed a controlled substance; and
2. That the substance was marijuana, a controlled substance.

The trial court then proceeded to Count 2 of the indictment, which charged the defendant with possession of cocaine, a controlled substance, in an amount of .5 grams or more, with the intent to sell.  The trial court instructed the jury that in order to find the defendant guilty of this charge, "the State must have proven beyond a reasonable doubt the existence of the following essential elements: 1. That the Defendant knowingly possessed cocaine, schedule II, a controlled substance; and 2. That the Defendant intended to sell that controlled substance.  Cocaine is a schedule II controlled substance."  In regards to the lesser included offense of attempted possession of cocaine in an amount of .5 grams or more, the trial court stated, "[a]nd I've told you before that this is the same as the marijuana.  I'm not going to read it. . . . All the terms have been provided for you."  The court gave the following instructions as to the lesser included offense of a lesser weight of cocaine:

> Any person who knowingly possesses with intent to sell a controlled substance is guilty of a crime.  For you to find the Defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
>> 1. That the Defendant knowingly possessed cocaine, scheduled II, a controlled substance; and
>> 2. That the defendant intended to sell that substance.
>
> And you have the definitions.

When instructing the jury as to the lesser included offense of simple possession of cocaine, the trial court stated, "[y]ou have the elements and the definitions." The defendant contends that because the trial court did not recite the elements of simple possession of cocaine but referred the jury back to the definition of simple possession in terms of marijuana, the jury was not given a "complete and correct charge of the law."  However, our supreme court has stated that:

> In our opinion, all of the elements of each offense should be described and defined in connection with that offense, although in *Martin* we did suggest that there could be cross-referencing or repetition in connection with the lesser offenses since jury instructions in felony cases are required by statute in this state to be written and physically delivered to the jurors for use in their deliberations.  Rule 30(c), T. R. Crim. P.

*State v. Cravens*, 764 S.W.2d 754, 756 (Tenn. 1989).  We conclude that the trial court did

6

not err by cross-referencing the definition of simple possession of cocaine with the instruction for simple possession of marijuana. The court defined the terms "knowingly" and "possession" and indicated several times that cocaine was a scheduled II, controlled substance. Because this was a felony case, the jury instructions were written down and delivered to the jurors. We conclude that there was sufficient information to give the jury a full and complete charge as to the offense of simple possession of cocaine. The defendant is not entitled to any relief on this issue.

## B. Facilitation Sentence

The defendant argues that the trial court committed plain error in sentencing the defendant to a four-year sentence for his conviction of facilitation of the possession of marijuana with the intent to sell. Specifically, he argues that a finding of guilt of facilitation of a Class E felony should have resulted in a conviction of a Class A misdemeanor. The State concedes that the offense is a Class A misdemeanor and that the defendant's maximum sentence is 11 months and 29 days. Because the defendant raises this issue for the first time on appeal, he asks this court to address his concern under the plain error doctrine.

"When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of the party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). In order for this court to determine that plain error exists, the following five factors must be present:

> (1) the record must clearly establish what occurred at the trial court;
> (2) a clear and unequivocal rule of law must have been breached;
> (3) a substantial right of the accused must have been adversely affected;
> (4) the accused did not waive the issue for tactical reasons; and
> (5) consideration of the issue is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). It is not necessary for this court to consider all five factors when it is clear from the record that at least one of the factors cannot be established. *Id.* at 283. In order to grant relief, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642. The defendant bears the burden of proving that the trial court committed plain error. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Tennessee Code Annotated section 39-17-417 states that a violation of subsection (a) with respect to a Schedule VI substance classified as marijuana in an amount not less than

14.175 grams nor more than ten pounds (4535 grams) is a Class E felony. T.C.A § 39-17-417 (g)(1) (2012). Tennessee Code Annotated section 39-11-403 states that the "facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged." T.C.A. § 39-11-403(b); *State v. Berry*, 141 S.W.3d 549, 565 (Tenn. 2004). A Class E felony is the lowest felony class, making a Class A misdemeanor the next offense class below a Class E felony. Because possession of marijuana in the amount of not less than one-half ounce or more than ten pounds is a Class E felony, the facilitation of possession of marijuana in that amount with the intent to sell is a Class A misdemeanor. *See State v. Robert Bentley Miller*, No. E1999-00970-CCA-R3-CD, 2000 WL 1772469, at *1 (Tenn. Crim. App. Dec. 4, 2000) (facilitation of the sale of a Schedule VI drug is a Class A misdemeanor). The sentence for a Class A misdemeanor shall not exceed 11 months and 29 days unless otherwise provided by statute. T.C.A. § 40-35-111(e)(1).

The record indicates that the defendant was sentenced to serve four years for a Class E felony conviction for facilitation of possession of a Schedule IV controlled substance. The jury verdict stated that, "We, the jury, find the Defendant guilty of facilitation of possession of a controlled substance, to wit, marijuana, Schedule VI, a controlled substance, in the amount of not less than one half ounce 14.175 grams, no more than 10 pounds, with intent to sell." It appears that the trial court intended for the judgment to state that the defendant was convicted of the Class E felony of facilitation of possession of a Schedule VI substance with intent to sell, which violates Tennessee Code Annotated sections 39-11-403 and 40-35-111. T.C.A. §§ 39-11-403(b); 40-35-111(e)(1). Under Tennessee Code Annotated section 39-11-403, the defendant should have been convicted of a Class A misdemeanor, as the defendant was convicted of facilitation of a Class E felony and a Class A misdemeanor is an offense next below a Class E felony. T.C.A. § 39-11-403(b); *see also Robert Bentley Miller*, 2000 WL 1772469, at *1. Because the defendant should have been convicted of a Class A misdemeanor, the sentence imposed by the trial court exceeds the statutory maximum sentence. Therefore, we conclude that the trial court committed plain error and remand this case for re-sentencing.

### C. Failure to Elect Predicate Felony

The defendant next contends that the trial court committed plain error when it did not require the State to elect the dangerous felony that the charge of possession of a deadly weapon during the commission or attempt to commit a dangerous felony. Specifically, he argues that the State should have been required to elect either possession of a scheduled VI drug for resale or possession of a schedule II drug for resale as the underlying felony. The State agrees that the trial court did not require this election and "concedes that the case should be remanded to the trial court for a new trial on the firearm-possession charge."

Tennessee Code Annotated section 39-17-1324 states that it is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony. T.C.A. § 39-17-1324 (a). The statute lists the dangerous felonies that may serve as the predicate for the firearm offense and includes a felony involving possession of a controlled substance with the intent to sell. T.C.A. § 39-17-1324(i)(1)(L). The indictment charged the defendant with one count of possession of marijuana with the intent to sell and one count of possession of cocaine with the intent to sell and did not specify which charge was the predicate felony for the firearm offense. The defendant was convicted of facilitation of possession of marijuana with the intent to sell, possession of cocaine for resale, and possession of drug paraphernalia. As facilitation of possession of marijuana with the intent to sell and possession of drug paraphernalia are misdemeanors[1], the only underlying felony that could support the firearm charge was possession of cocaine for resale. The trial court did not instruct the jury as to which "dangerous felony" applied to the use of a firearm nor provide a definition of "dangerous felony." The record does not indicate which conviction the jury determined was the underlying felony for the firearm offense.

The jury convicted the defendant of facilitation of possession of marijuana - a misdemeanor, but the jury did not know that it was not a felony. So the election issue remains. This court has previously held that the trial court's failure to require the State to elect a predicate felony for the possession of a firearm and failure to instruct the jury as to the definition of "dangerous felony" constitutes reversible error. *State v. Martin Boyce*, No. W2012-00887-CCA-R3-CD, 2013 WL 4027244, at *14 (Tenn. Crim. App. Aug. 6, 2013); *State v. Trutonio Yancey and Bernard McThune*, No. W2011-01543-CCA-R3-CD, 2012 WL 4057369, at *9 (Tenn. Crim. App. Sept. 17, 2012); *State v. Michael L. Powell and Randall S. Horne*, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *14 (Tenn. Crim. App. May 10, 2012). We conclude that the same remedy is applicable here and reverse the conviction for possession of a firearm during the commission of a dangerous felony and remand for a new trial as to that charge.

## CONCLUSION

Because the defendant's conviction for facilitation should have been a Class A misdemeanor with a maximum sentence of 11 months and 29 days, we reverse the facilitation judgment and we remand the case for re-sentencing. We reverse the judgment for conviction for possession of a weapon during the commission of a dangerous felony and

---

[1]As we have previously concluded, the conviction for facilitation of marijuana with the intent to sell was erroneously classified as a Class E felony. Because it should have been a Class A misdemeanor, the conviction does not fall into one of the "dangerous felonies" enumerated by Tennessee Code Annotated section 39-17-1324(i)(1).

remand that case for a new trial because the trial court did not require the State to elect a predicate felony supporting the charge of possession of a firearm during the commission or attempt to commit a dangerous felony and did not instruct the jury as to the definition of "dangerous felony." We affirm the trial court's judgment of conviction for possession of cocaine with the intent to sell.

_____
JOHN EVERETT WILLIAMS, JUDGE