IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 5, 2019

## STATE OF TENNESSEE v. JONATHAN ALEXANDER

**Appeal from the Circuit Court for Hardin County**
**No. 17-CR-104      Charles C. McGinley, Judge**

_____

**No. W2018-00442-CCA-R3-CD**

_____

A Hardin County jury convicted the defendant of two counts of unlawful possession of a firearm (counts 1 and 2), possession of a Schedule II controlled substance with intent to sell or deliver (count 3), possession of unlawful drug paraphernalia (count 4), and possession of a firearm during the commission of a dangerous felony (count 5).  On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions in counts 3 and 5 and asserts the trial court erred in failing to instruct the jury on the inference of casual exchange pursuant to Tennessee Code Annotated section 39-17-419.  Upon our review of the record, we conclude sufficient evidence exists to support the defendant's convictions and the defendant failed to preserve the jury instruction issue for appeal.  In reviewing the sentencing determinations of the trial court, however, we note several errors in the completion of the judgment forms for counts 1, 2, 3, and 4.  Specifically, there are clerical errors in the felony classifications as marked in counts 1, 2, and 3 (in count 1, the trial court incorrectly classified the conviction as a Class C felony rather than a Class B felony; in count 2, the trial court incorrectly classified the conviction as a Class E felony rather than a Class C felony; and in count 3, the trial court incorrectly classified the conviction as a Class C felony rather than a Class B felony).  Additionally, in merging the defendant's convictions in counts 1 and 2, the trial court failed to impose a sentence for the merged conviction of count 2.  Finally, in count 4, the trial court incorrectly sentenced the defendant for a misdemeanor conviction rather than the felony for which he was found guilty, warranting a new sentencing hearing on the same.  Consequently, we remand the case to the trial court for sentencing as to counts 2 and 4 and the entry of corrected and completed judgment forms as to counts 1, 2, 3, and 4.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;
Case Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Terry Lee Dicus, Jr., Savannah, Tennessee, for the appellant, Jonathan Alexander.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance Dennis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This case arises from the arrest of the defendant during a multi-agency saturation operation performed throughout Hardin County. As part of the operation, officers executed an outstanding arrest warrant against the defendant on April 28, 2017. Subsequent to his arrest, the defendant was indicted for two counts of unlawful possession of a firearm, one count of possession of a Schedule II controlled substance with intent to sell or deliver, one count of possession of unlawful drug paraphernalia, and one count of possession of a firearm during the commission of a dangerous felony. Tenn. Code Ann. §§ 39-17-417; -425; -1307; -1324. Prior to trial, the parties entered an agreed stipulation stating the defendant is a convicted felon "for the sole purpose of determining an element of unlawful possession of a firearm." The State presented the following evidence at trial.

Drug task force officer Jason Caldwell of the Hardin County Sheriff's Department participated in the arrest of the defendant on April 28, 2017. Pursuant to his probation officer, the defendant lived with his parents in Hardin County, Tennessee at the time of arrest. As Officer Caldwell approached the home, he saw the defendant and another male in the living room just inside the front door. Officer Caldwell secured the defendant, a female, and two other males on the front porch, noting at trial he did not know the names of the three other individuals.

After securing the scene, Officer Caldwell *Mirandized* the defendant and conducted a consensual search of the "front portion" of the home where it appeared the defendant lived.[1] During the search, Officer Caldwell saw "male clothing, as well as a pair of boots" and a firearm next to the couch in the living room where the defendant was prior to his arrest. Officer Caldwell also found a "Red Bull can with the powder

---

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

- 2 -

substance on top of it" on a table six to eight inches from the couch. Both the firearm and the Red Bull can were within five to seven feet from where the defendant stood prior to his arrest. Officer Caldwell explained the lid of the Red Bull can was cut and bent to form a "bowl" to hold the white powder, which was later identified as morphine. According to Officer Caldwell, "individuals who intravenously inject any kind of illicit drugs or prescription drugs, they'll take a spoon, or in this instance, there could be a can. They'll put their substance in it, put a little bit of water to it, and heat it up to inject it in the body." Officer Caldwell also found what appeared to be "a couple of marijuana roaches" during the search. Regarding the firearm, Officer Caldwell learned it belonged to the defendant's father. However, at the time of the defendant's arrest, the firearm was loaded with one round and found next to the couch where the defendant slept. Officer Caldwell stated he did not request DNA or fingerprint analysis for the evidence seized during the search, explaining it was unnecessary to do so based upon his training and experience and the "circumstances that surrounded the incident." All of the items found during the search were entered into evidence.

During cross examination, Officer Caldwell stated only the defendant was charged with crimes subsequent to the search of his parents' home. Officer Caldwell did not inquire if the defendant had a prescription for morphine, but noted "I was never advised he had a script and for it to be crushed down and done like it was, that's what I'm basing all my evidence off of." Officer Caldwell explained he has "arrested individuals and made cases where they have purchased liquid in a syringe from an individual that's melted narcotics down," but noted he did not find a syringe during the search. However, based upon his experience and training, Officer Caldwell believed the defendant "was going to distribute the morphine to the other three individuals that was (sic) there at the house with him" and stated "[t]hrough my training and experience, there was a significant amount of morphine that is crushed up in that [0].5 grams of white powdered substance there."

Rachel Strandquist, a special agent forensic scientist with the Drug Chemistry Unit of the Tennessee Bureau of Investigation ("TBI"), analyzed the powdery substance found on the Red Bull can and filed a report regarding the same. Special Agent Strandquist used a gas chromatograph mass spectrometer and an ionization detector instrument to test the substance and explained her findings, as follows: "I was submitted a metal can that had a white chunky powder on the bottom. This I tested, and I identified morphine. It was [0].5 grams was the amount that I scraped off of the can." The State entered a copy of her report into evidence. Upon reviewing the report, Special Agent Strandquist noted "there [was] charring on the inside of the can" and opined "it does appear that someone was trying to smoke it." Regarding how the defendant was likely using the morphine prior to arrest, she further stated: "I can't say for certain. To me, it appears as though it's for personal use, but I cannot say what was happening at that time."

Special Agent Brent Booth of the TBI also participated in the defendant's arrest on April 28, 2017. When Special Agent Booth entered the home, Officer Caldwell already had the defendant in custody in the living room where Special Agent Booth saw a firearm against the wall next to the couch. Special Agent Booth helped place the defendant in the patrol car to be transported to jail. During cross-examination, Special Agent Booth stated in his experience with drug investigations he has seen morphine pills sold "in wholes and halves, if they're scored" and has encountered drugs that have been sold after being crushed and heated. Special Agent Booth testified the way the morphine was found in the Red Bull can indicated drug use.

At the close of the State's proof, the defendant moved for a judgment of acquittal, which was denied by the trial court. The defendant then presented evidence from his mother, Martha Alexander. Ms. Alexander testified that during April 2017, the defendant "would stay a few days with" her and her husband and sometimes slept on the couch in the living room. At the time of the defendant's arrest, Ms. Alexander was not home and did not know drugs were in her home. She identified the firearm previously marked into evidence as her husband's, which he had owned for approximately 30 years, and stated she did not know where her husband usually stored the gun. Ms. Alexander did not know the defendant could not have a firearm despite him being a convicted felon. The defendant waived his right to testify, closed his proof, and the jury convicted him as charged on all counts.

At a subsequent sentencing hearing, the trial court merged the defendant's conviction in count 2 into count 1 and imposed a fifteen-year sentence. The trial court sentenced the defendant to fifteen years in count 3 and eleven months and twenty-nine days in count 4 and ran counts 1, 3, and 4 concurrently to one another. The trial court imposed a consecutive sentence of five years in count 5.[2] The defendant filed a motion for new trial and testified at a hearing on the same. The trial court, however, denied the motion. This timely appeal followed.

### *Analysis*

On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions for possession of a Schedule II controlled substance with intent to sell or deliver (count 3) and possession of a firearm during the commission of a dangerous felony (count 5). The defendant also argues the trial court erred in failing to instruct the

---

[2]Pursuant to the judgment forms entered, the sentences in counts 1, 3, and 4 were run concurrently to the defendant's pending sentences in case numbers "CR 10,058 and 16-CR-41."

jury on the inference of casual exchange. After reviewing the record, we disagree with the defendant and will address each issue in turn.

I. *Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of

fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

### a. Possession of a Schedule II Controlled Substance with the Intent to Sell or Deliver

In attacking the sufficiency of the evidence as to his conviction for possession of a Schedule II controlled substance with the intent to sell or deliver, the defendant alleges the evidence at trial "prove[d] nothing more than casual exchange, if, casual exchange exists," and argues "[t]wo out of three government witnesses admitted" the Red Bull can containing 0.5 grams of morphine "was more indicative of using morphine compared to intending on delivering morphine." The State contends sufficient evidence exists to support the conviction as "the police found [the defendant] inside his own residence within mere feet of 0.5 grams of morphine on a Red Bull can being used as a cooking apparatus." We agree with the State.

Tennessee Code Annotated section 39-17-417 makes it a Class C felony to knowingly possess a Schedule II controlled substance with the intent to sell or deliver the controlled substance. Tenn. Code Ann. § 39-17-417. One acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). Morphine is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(b)(1)(I). "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). In this context, "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419; *State v. Holt*, 691 S.W.2d 520, 522 (Tenn. 1984).

Here, the evidence showed Officer Caldwell and Special Agent Booth executed an outstanding arrest warrant on the defendant on April 28, 2017. At the time, the defendant

lived at his parents' home where he sometimes slept on the couch in the living room. During a consensual search of the living room after the defendant's arrest, Officer Caldwell found a loaded rifle and a Red Bull can containing a white powdery substance. Three other individuals were also in the home. Special Agent Strandquist tested the white powdery substance and identified it as 0.5 grams of morphine. Both the rifle and Red Bull can containing 0.5 grams of morphine were found near the couch in the living room within five to seven feet from where Officer Caldwell saw the defendant prior to his arrest. According to Officer Caldwell, the Red Bull can was cut to form a bowl in order to heat the morphine and inject the drugs intravenously. He believed "there was a significant amount of morphine" in the Red Bull can and opined the defendant "was going to distribute the morphine" to the three individuals who were in the home prior to the arrest. Both Special Agent Strandquist and Special Agent Booth testified the state in which the officers found the morphine on the Red Bull can indicated drug use. While the evidence against the defendant was mostly circumstantial, our supreme court allows the jury to determine "the extent to which the circumstances are consistent with guilt and inconsistent with innocence." *See Dorantes*, 331 S.W.3d at 379 (citing *Rice*, 184 S.W.3d at 662). Accordingly, when viewed in a light most favorable to the State, sufficient evidence exists to show the defendant possessed morphine with the intent to sell and/or deliver.

In support of his insufficiency argument, the defendant relies on an alleged discrepancy in the testimonies of the State's witnesses wherein, despite the above outlined evidence, the defendant asserts Special Agents Booth and Strandquist admitted the morphine was for personal use. We, however, find this argument misplaced as the agents' statements do not overcome the circumstantial evidence produced by the State in support of this conviction which indicated the defendant planned to distribute the morphine to the three individuals in the home with him prior to his arrest. *Id.* Furthermore, any inconsistencies in the agents' testimonies alleged by the defendant were resolved by the jury in reaching their verdict. This Court will not reweigh the evidence. *See id.* Accordingly, sufficient evidence exists to show the defendant possessed morphine with the intent to sell and/or deliver and the defendant is not entitled to relief.

### b. *Possession of a Firearm during the Commission of a Dangerous Felony*

In conjunction with his previous argument, the defendant contends the evidence is insufficient to support his conviction for possession of a firearm during the commission of a dangerous felony. We, again, disagree. "It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." Tenn. Code Ann. § 39-17-1324(a). One such "dangerous felony" is possession with the intent to sell or distribute a controlled substance. Tenn. Code Ann. § 39-17-1324(i)(1)(L).

The evidence at trial showed a loaded rifle sat within feet of the defendant prior to his arrest. While the subsequent investigation revealed the rifle belonged to the defendant's father, nothing in the record disputes the jury's finding that the defendant possessed the gun as he prepared to distribute morphine to the three individuals in his home. *State v. James Thomas, Jr.*, No. M2014-00972-CCA-R3-CD, 2015 WL 4484888, at *4 (Tenn. Crim. App. July 23, 2015) (internal quotations omitted) (noting "[c]onstructive possession requires that a defendant have the power and intention . . . to exercise dominion and control over the given item allegedly possessed"); *see also Dorantes*, 331 S.W.3d at 379. Accordingly, not only is the evidence sufficient to support the defendant's conviction for possession of morphine with the intent to sell and/or deliver, but it is also sufficient to support his conviction for possession of a firearm during the commission of a dangerous felony. The defendant is not entitled to relief.

## II. *Jury Instructions*

The defendant argues the trial court erred in failing to instruct the jury on the inference of casual exchange. The defendant admits he failed to request a jury instruction on the casual exchange inference in writing and requests plain error review of the same. The State asserts the defendant cannot establish plain error as to this issue. Upon our review of the record, however, we conclude the issue is waived and plain error review is not warranted.

First, we note the defendant waived this issue for failing to request a jury instruction on the inference of casual exchange in writing and he failed to object to the exclusion of the jury instruction at trial. Tenn. R. App. P. 36(a); *State v. Page*, 184 S.W.3d 223, 230 (Tenn. 2006) (citing *State v. Cravens*, 764 S.W.2d 754, 757 (Tenn. 1989)). Though the defendant admits he failed to preserve the issue for appeal, he nonetheless asserts the issue warrants plain error review because he objected to "the oversight" in failing to request the instruction "as the jury was retiring to deliberate." The record, however, does not demonstrate the same. Rather, the record shows the trial court provided the jury with a portion of the casual exchange inference in defining the crime of possession with the intent to sell or deliver (count 3) at the outset of the trial. Specifically, the trial court stated:

> I[t] may be inferred from the amount of controlled substances possessed by an offender, along with other relevant factors surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing them.

This language mirrors that of Tennessee Code Annotated section 39-17-419. Though the trial court omitted the remainder of the casual exchange inference statute, it provided the general inference to the jury at the outset of trial. Furthermore, we note, casual exchange is not a lesser-included offense of possession with intent to deliver. *State v. Timothy Wayne Grimes*, No. M2001-01460-CCA-R3-CD, 2002 WL 31373472, at *6 (Tenn. Crim. App. Oct. 16, 2002); *see also State v. Nelson*, 275 S.W.3d 851, 865 (Tenn. Crim. App. 2008) (citing *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007) (declining to conduct plain error review of the trial court's failure to instruct the jury on the inference of casual exchange because it is not a lesser-included offense of possession with intent to sell and because the defendant failed to request the instruction at trial or in his motion for new trial). For these reasons, the issue is waived and the defendant is not entitled to plain error review.

## *Conclusion*

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court. However, because of the clerical and sentencing errors detailed above, we remand the case to the trial court for a new sentencing hearing and the correction of the judgment forms consistent with this opinion.

_____
J. ROSS DYER, JUDGE